1

SHOOK, HARDY & BACON L.L.P.
Rachel A. Straus (SBN 268836)
rstraus@shb.com
Saman M. Rejali (SBN 274517)
srejali@shb.com
2049 Century Park East, Suite 3000
Los Angeles, California 90067
Telephone:   424.285.8330
Facsimile:   424.204.9093

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER SISTI, individually and on behalf of all others similarly situated, | Case No.  2:25-cv-10669-JFW-DFM |
| Plaintiff, | Assigned to: Hon. John F. Walter |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT** |
| BOSLEY INC.; and BOSLEY MEDICAL GROUP, a medical corporation; | |
| Defendants. | Date:  February 23, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom 7A - 7th Floor |

1

# **TABLE OF CONTENTS**

2

**Page**

3

INTRODUCTION ............................................................................................... 1

4

RELEVANT BACKGROUND .......................................................................... 1

5

I.      Plaintiff's Allegations ............................................................................. 1

6

II.     Plaintiff Consented to Bosley's Terms of Use and Privacy Policy When He Accessed Bosley's Website. ............................................................... 3

7

APPLICABLE LEGAL STANDARDS ............................................................ 5

8

ARGUMENT IN SUPPORT OF DISMISSING PLAINTIFF'S CLAIMS ....... 6

9

10

I.      Plaintiff Fails to Establish Article III Standing Due to Lack of Concrete Injury. ...................................................................................................... 6

11

II.     Plaintiff's Consent Bars All of His Claims. ........................................... 8

12

III.    Plaintiff Fails to State Any of His Claims .............................................. 11

13

        A.     Plaintiff Fails to State a Wiretap Claim (Counts I, III & V) .......... 11

14

        B.     Plaintiff's CMIA (Count II) Claim Fails. ...................................... 15

15

        C.     Plaintiff Fails To Plausibly Allege Negligence (Count IV) ........... 17

16

        D.     Plaintiffs' Claim Under The Maryland Consumer Protection Act ("MCPA") Fails ............................................................................. 18

17

18

        E.     Plaintiff Cannot Support A Claim For Unjust Enrichment ............ 20

        F.     Plaintiff Cannot State A Claim For Invasion Of Privacy (Count VIII) ............................................................................................... 20

19

20

CONCLUSION .................................................................................................. 23

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. State*,
   424 A.2d 344 (Md. 1981) ...............................................................13

*Adler v. Community.com*,
   2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) .................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................5, 15, 17

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) .........................................................17

*Banga v. Equifax Info. Servs. LLC*,
   2015 WL 3799546 (N.D. Cal. June 18, 2015)................................19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).........................................................................5

*Campbell v. Facebook*,
   77 F. Supp. 3d 836 (N.D. Cal. 2014)..............................................18

*Corona v. Sony Pictures Ent., Inc.*,
   2015 WL 3916744 (C.D. Cal. 2015) ................................................7

*Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023)..............14

*Eisenhower Med. Ctr. v. Super. Ct.*,
   172 Cal. Rptr. 3d 165 (Cal. Ct. App. 2014)....................................14

*Emmerick v. Ridgecrest Reg'l Hosp.*,
   2018 WL 784302 (E.D. Cal. Feb. 8, 2018) .....................................14

*ESG Cap. Partners, LP v. Stratos*,
   828 F.3d 1023 (9th Cir. 2016) .......................................................17

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) .........................................................10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re Google Assistant Privacy Litig.*,
  457 F. Supp. 3d 797 (N.D. Cal. 2020)..............................................................9

*In re Google Inc.*,
  2013 WL 5423918 (N.D. Cal. Sept. 26, 2013).........................................9, 10

*In re Google, Inc. Privacy Policy Litig.*,
  58 F. Supp. 3d 968 (N.D. Cal. 2014)........................................................3, 20

*Hammerling v. Google LLC*,
  2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ...............................................11

*Hernandez v. Hillsides, Inc.*,
  47 Cal. 4th 272 P.3d 1063 (2009)...........................................................18, 20

*In re iPhone Application Litigation*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012)..........................................................15

*Javier v. Assurance IQ, LLC*,
  2021 WL 940319 (N.D. Cal. Mar. 9, 2021) .....................................................8

*Kent v. Microsoft Corp.*,
  2013 WL 3353875 (C.D. Cal. July 1, 2013) ..................................................10

*Khamooshi v. Politico LLC*,
  786 F. Supp. 3d 1174 (N.D. Cal. 2025)............................................................6

*Klein v. Facebook, Inc.*,
  580 F. Supp. 3d 743 (N.D. Cal. 2022)............................................................17

*Konop v. Hawaiian Airlines, Inc.*,
  302 F.3d 868 (9th Cir. 2002) ..........................................................................11

*Kurowski v. Rush Sys. for Health*,
  659 F. Supp. 3d 931 (N.D. Ill. 2023)..............................................................19

*Lakes v. Ubisoft, Inc.*,
  777 F. Supp. 3d 1047 (N.D. Cal. 2025)............................................................9

*Licea v. Am. Eagle. Outfitters, Inc.*,
  659 F. Supp. 3d 1072 (C.D. Cal. 2023)...........................................................11

*Linman v. Marten Transp., Ltd.*,
  2023 WL 2562712 (W.D. Wis. Mar. 17, 2023) ..............................................19

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012)..............................................18, 19, 20

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)....................................................................................4, 5

*Martin v. State*,
   96 A.3d 765 (Md. Ct. App. 2014) .................................................................12

*Mastel v. Miniclip SA*,
   549 F. Supp. 3d 1129 (E.D. Cal. 2021) ........................................................11

*Medoff v. Minka Lighting, LLC*, 2023 WL 4291973 (C.D. Cal. May 8, 2023) 16

*Mitchell v. U.S. Dep't of Agric. Farm Serv. Agency*,
   2014 WL 7240671 (W.D. Wis. Dec. 17, 2014)............................................19

*Newkirk v. Harbor East Parcel, D-Hotel, LLC*,
   2024 U.S. Dist. LEXIS 35881 (D. Md. Mar. 1, 2024) ............................8, 16

*In re Nickelodeon Consumer Privacy Litig.*,
   827 F.3d 262 ................................................................................................20

*Opperman v. Path, Inc.*,
   205 F. Supp. 3d 1064 (N.D. Cal. 2016).........................................................7

*Pena v. GameStop, Inc.*,
   670 F. Supp. 3d 1112 (S.D. Cal. Apr. 27, 2023) ..........................................10

*People v. Nakai*,
   183 Cal. App. 4th 499 (2010) ......................................................................18

*Popa v. Microsoft Corp.*,
   2025 WL 2448824 (9th Cir. Aug. 26, 2025) ...............................................5, 6

*Raines v. U.S. Healthworks Med. Grp.*,
   2021 WL 5763831 (S.D. Cal. Jan. 25, 2021), *aff'd* 2023 WL 6866339 (9th
   Cir. Oct. 18, 2023) .......................................................................................19

*Razuki v. Caliber Home Loans, Inc.*,
   2018 WL 6018361 (S.D. Cal. Nov. 15, 2018).................................................7

*Salameh v. Tarsadia Hotel*,
   726 F.3d 1124 (9th Cir. 2013) ......................................................................16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT

*Sallie Holly v. Alta Newport Hosp., Inc*,
  2020 WL 6161457 (C.D. Cal. Oct. 21, 2020) ...........................................6, 15

*Savala v. Freedom Commc'ns, Inc.*,
  2006 WL 1738169 (Cal. Ct. App. June 27, 2006).......................................19

*Schmerling v. Injured Workers' Ins. Fund*,
  795 A.2d 715 (Md. 2002) ......................................................................12, 13

*Seismic Reservoir 2020, Inc. v. Paulsson*,
  785 F.3d 330 (9th Cir. 2015) ...................................................................5

*Silver v. Stripe Inc.*,
  2021 WL 3191752 (N.D. Cal. July 28, 2021) .........................................9, 10

*Smith v Facebook, Inc.*,
  262 F. Supp. 3d 943-955-56 (N.D. Cal. 2017)......................................8

*Smith v. Facebook, Inc.*,
  262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018)
  .......................................................................................................10, 18

*Snipes v. Wilkie*,
  2019 WL 1283936 (N.D. Cal. 2019) ..........................................................18

*Sonner v. Premier Nutrition Corp.*,
  971 F. 3d 834 (9th Cir. 2020) ....................................................................18

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  903 F. Supp. 2d 942 (S.D. Cal. 2012) ........................................................15

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)..............................................................................4, 5

*Starbuck v. Kaiser Found. Health Plan, Inc.*,
  275 Cal. Rptr. 444 (Ct. App. 1990) .............................................................14

*Steinberg v. CVS Caremark Corp.*,
  899 F. Supp. 2d 331 (E.D. Pa. 2012)..........................................................19

*Stewart v. Bierman*,
  859 F. Supp. 2d 754 (D. Md. 2012)............................................................16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT

*Swarts v. Home Depot, Inc.*,
    689 F. Supp. 3d 732 (N.D. Cal. 2023)...........................................................11

*Thomas v. Papa Johns Int'l, Inc.*,
    2024 WL 2060140 (S.D. Cal. May 8, 2024) ................................................18

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)...........................................................................................5

*TransUnion LLC v. Ramirez*,
    595 U.S. 413 (2021)...........................................................................................5

*Twardzik v. HP Inc.*,
    No. 22-2650, 2023 U.S. App. LEXIS 23740 (3d Cir. Sep. 7, 2023).............17

*United States v. Corinthian Colls.*,
    655 F.3d 984 (9th Cir. 2011) .............................................................................3

*Wilson v. Rater8, LLC*,
    2021 WL 4865930 (S.D. Cal. Oct. 18, 2021)................................................14

**Statutes**

18 U.S.C. §§ 2510–2523 .........................................................................................2

18 U.S.C. § 2511(1)(a)-(e) ......................................................................................7

28 U.S.C. § 2511(2)(d)............................................................................................7

Cal. Civ. Code § 56 et seq....................................................................................2, 13

Cal. Civ. Code § 56.05(i) .......................................................................................13

Cal. Civ. Code § 56.10(a) ...................................................................................8, 13

Cal. Civ. Code § 56.10(c)(3) .............................................................................14, 15

Cal. Penal Code § 630 et seq....................................................................................2

Cal. Penal Code § 631(a)....................................................................................7, 11

Md. Code Ann., Com. Law § 13-101 et seq. .....................................2, 8, 16, 17

Md. Code Ann., Com. Law § 13-301.....................................................................16

Md. Code Ann., Com. Law § 13-303(1) ................................................................16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT

Md. Code Ann., Com. Law § 13-408 ................................................................16

Md. Code Ann., Cts. & Jud. Proc. § 10-402 ...................................2, 7, 11, 12

Md. Code, Ann., Cts. & Jud. Proc. § 10-401 ...............................................12

Md. Code, Ann., Cts. & Jud. Proc. § 10-401(8) ...........................................13

Md. Code, Ann., Cts. & Jud. Proc. § 10-402(c)(3) .....................................8, 12

**Other Authorities**

Fed. R. Civ. P. 9(b) .......................................................................................16

Fed. R. Civ. P. 12(b)(1) ..............................................................................4, 5

Fed. R. Civ. P. 12(b)(6) ................................................................1, 5, 15, 17

Fed. R. Evid. 201(b) ........................................................................................3

U.S. Const. art. III ...................................................................................*passim*

**INTRODUCTION**

This case is among numerous putative class actions filed nationwide, challenging the routine use of web-based software tools designed to help companies analyze and enhance their digital platforms—alleging such use violates wiretapping and related statutes. Plaintiff Alexander Sisti alleges that Bosley Inc. and Bosley Medical Group (collectively, "Bosley") improperly disclosed certain personal information to Meta Platforms, Inc. ("Meta"), formerly Facebook, and TikTok Inc. ("TikTok"). According to the Complaint ("Compl."), Bosley installed the Meta Pixel and TikTok Pixel on its website. Plaintiff describes the Meta Pixel as "a string of code that companies can embed on their websites to monitor and track the actions taken by visitors to their websites and to report them back to Meta." Compl. ¶ 56. Plaintiff describes the "TikTok Pixel" as a "unique piece of code that can [be] placed on websites to share website events with TikTok, to measure traffic and ad campaign performance on the website, and to optimize ad campaigns for finding new customers." *Id*. ¶ 102. Plaintiff asserts that when he visited Bosley's website and scheduled a hair transplantation consultation, Bosley transmitted that fact and other personal information to Meta and TikTok through tracking pixels embedded on its website. *Id.* ¶ 21.

Each of Plaintiff's claims suffers from fundamental pleading deficiencies. First, Plaintiff fails to establish Article III standing because he does not allege a concrete injury cognizable under any of the asserted statutory or common law claims. Second, each of Plaintiff's claims fails because Plaintiff affirmatively consented to the alleged disclosure he now claims was improper. Finally, each of Plaintiff's claims is defective under Fed. R. Civ. P. 12(b)(6) for various independent reasons.

**RELEVANT BACKGROUND**

**I.     Plaintiff's Allegations.**

Plaintiff, a Maryland resident, alleges that on November 3, 2024, he scheduled a hair transplantation consultation through the scheduler on Bosley's website, and provided his name, email address, and home address when making this appointment.

Compl. ¶ 14.  Plaintiff alleges that when he scheduled this consultation, he had a Meta account, a Meta profile, and a Facebook ID ("FID") associated with that profile (*id.* ¶ 15), as well as a TikTok account and a TikTok profile (*id.* ¶ 19).  He alleges that he provided both Meta and TikTok with his name, birthday, email address, and phone number in association with the creation of his Facebook and TikTok accounts.  *Id.* ¶¶ 16, 20.

Plaintiff's central allegation is that Bosley disclosed to both Meta and TikTok unique identifiers that would permit Meta and TikTok to identify him, the fact that he had scheduled a consultation with a hair transplantation clinic, and other pieces of unspecified "information about Plaintiff and the device he used to schedule the consultation."  *Id.* ¶¶ 17, 21.

Plaintiff's claims are premised entirely on Bosley's supposed transmission to Meta and TikTok of (1) the user's Facebook ID and TikTok ID; and (2) various pieces of "Event Data," consisting of transmissions reflecting the fact that Plaintiff filled out the contact form on Bosley's scheduler tool, clicked the "Book Appointment" button.  *See id.* ¶¶ 120-122.  Plaintiff does not actually allege that Bosley captured the information that Plaintiff inputted into Bosley's scheduler tool and transmitted that information to Meta and/or TikTok.  Rather, the Complaint alleges only that the pixels on Bosley's website captured and transmitted Plaintiff's unique Meta and TikTok identifiers, along with data reflecting ***the fact*** that Plaintiff had filled out Bosley's scheduler form (not data conveying the information provided therein).  *See, e.g.*, *id.* ¶ 128.

Based on these allegations, Plaintiff is asserting the following causes of action (i) violation of the Electronic Communications Privacy Act ("ECPA"), (ii) violation of California's Confidentiality of Medical Information Act, (iii) violation of the California Invasion of Privacy Act, (iv) negligence, (v) violation of the Maryland Wiretap Act, (vi) violation of the Maryland Consumer Protection Act, (vii) unjust enrichment, and (viii) invasion of privacy-intrusion upon seclusion.

## II. Plaintiff Consented to Bosley's Terms of Use and Privacy Policy When He Accessed Bosley's Website.

Plaintiff alleges that he never "consented, agreed, authorized, or otherwise permitted Defendants to disclose his Private Information" to Meta or to TikTok. Compl. ¶¶ 18, 22. Contrary to those bald assertions, verifiable facts show that all users of Bosley's website—including Plaintiff—must provide affirmative consent to the use of third-party tracking pixels before submitting any personal information through Bosley's scheduler tool.[1]

As the Complaint explains, "[t]o schedule a consultation with one of Defendants' hair transplantation clinics, patients navigate to the Website and click on the 'Schedule Free Consultation' button." *Id*. ¶ 73. This leads the patient to a scheduler application through which the patient can schedule a consultation. *Id*. ¶ 74. The Complaint excerpts a screenshot of the first page of the scheduler (*see id*. ¶ 75), but conspicuously omits disclaimer language—displayed on the website ***directly below*** the portion excerpted in the Complaint—that requires the patient to acknowledge that "[b]y providing a phone number and submitting this form … I also ***agree to Bosley's*** <u>***Terms of Service***</u> ***and acknowledge the*** <u>***Privacy Policy***</u>." *See* Request for Judicial Notice ("RJN") Ex. A (Scheduler page from the Website) and Ex. C (Privacy Policy - Bosley Hair Transplant) (Effective Date / Last Updated Date: February 2023). The disclaimer on the Scheduler page provides hyperlinks to the Terms of Service and the Privacy Policy. RJN Ex. A.

---

[1] As set forth below and in the accompanying Request for Judicial Notice, the Court may take judicial notice of Bosley's website because its authenticity "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b), and because Plaintiff's complaint refers to the website, it is central to the plaintiff's claim, and its authenticity cannot reasonably be questioned, *see* <u>*United States v. Corinthian Colls.*</u>, 655 F.3d 984, 999 (9th Cir. 2011).

The "Introduction" section to the Terms of Use explicitly states that any use of Bosley's website is conditioned on the user's agreement to the terms contained therein:

> "By accessing and using the website you are consenting to be bound by Bosley's privacy policy and this website's terms of use in effect at the time of your use. ***The terms in this privacy policy also apply to the personal information you provide to us through any means.*** This privacy policy is not negotiable. If you do not agree to be bound by any of the terms contained in this privacy policy or in our terms of use, [or if you] disagree with our information collection or disclosures practices … then you should not access or use the website or our services for any purpose[.]"[2]

The Privacy Policy, in turn, explains exactly what types of information Bosley's website collects from users—including "contact information," "demographic information" (*e.g.*, name, address, email, phone number), and "site behaviour." *See* Ex. C (Privacy Policy). The Privacy Policy further states that Bosley collects information "[t]hrough [our] use of cookies and other automatic data collection technologies," including third-party advertising cookies:

> **"HOW AND WHEN DO WE COLLECT INFORMATION?** . . .
> <u>Through our Use of Cookies and Other Automatic Data Collection Technologies</u>
> When you visit our Sites, open or click on emails we send you, or interact with our advertisements. We or third parties we work with automatically collect certain information using technologies such as cookies, web beacons, clear GIF, pixels, internet tags, web server logs, and other data collection tools. For more information, please see the "Cookies and Other Information Collection Technologies" section below. . . .
>
> Advertising cookies may be placed by us or third parties to enable third party ad networks to recognize a unique cookie on your computer or mobile device. The information that is collected and disclosed by these types of cookies may also be linked to the device identifier of the device you are using to allow us to keep track of all the websites you have visited that are associated with the ad network. This information may be used for the purpose of targeting advertisements on our Sites and third party sites based on those interests."

*Id*. The Privacy Policy also explains exactly how advertising cookies are used on Bosley's website, the purpose for such cookies, and how information is collected and disclosed by those types of cookies:

> Advertising cookies may be placed by us or third parties to enable third party ad

---

[2] RJN Ex. B, Terms of Use (emphasis added).

networks to recognize a unique cookie on your computer or mobile device. The information that is collected and disclosed by these types of cookies may also be linked to the device identifier of the device you are using to allow us to keep track of all the websites you have visited that are associated with the ad network. This information may be used for the purpose of targeting advertisements on our Sites and third party sites based on those interests.

*Id*. The Privacy Policy has an Effective Date and Last Updated Date of February 2023, meaning it was in effect at the time when Plaintiff allegedly accessed Bosley's website to schedule a hair transplantation consultation in November 2024.  Compl. ¶ 14.

## APPLICABLE LEGAL STANDARDS

This Court lacks subject matter jurisdiction if the Complaint fails to show that the plaintiff has standing under Article III.  *See* Fed. R. Civ. P. 12(b)(1).  Article III standing requires that (1) the plaintiff must have suffered an "injury in fact" that is both "concrete and particularized" and "actual or imminent"; (2) "there must be a causal connection between the injury and the conduct complained of"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks and citations omitted).  A "concrete" injury "must actually exist"—in other words, it must be "real, and not abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016).  To allege a "concrete" injury sufficient to support Article III standing, a plaintiff must allege that they have suffered "a harm that has traditionally been actionable in our nation's legal system." *Popa v. Microsoft Corp.*, 2025 WL 2448824, at *4 (9th Cir. Aug. 26, 2025).

Federal Rule of Civil Procedure 12(b)(6) provides that an action must be dismissed where, as here, the complaint fails "to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  On a motion to dismiss, the Court must separate and disregard the complaint's legal conclusions. *Id.*

at 678-79. Any remaining factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If the complaint pleads facts "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Claims also may be dismissed based on a dispositive issue of law. *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015). Conclusory allegations are not entitled to the presumption of truth, and a plaintiff "armed with nothing more than conclusions," "labels," or "[t]hreadbare recitals of the elements of a cause of action" fails to state a claim. *Iqbal*, 556 U.S. at 678.

## ARGUMENT IN SUPPORT OF DISMISSING PLAINTIFF'S CLAIMS

## I. Plaintiff Fails to Establish Article III Standing Due to Lack of Concrete Injury.

On a motion under Rule 12(b)(1), "[a]s the party invoking federal jurisdiction, the plaintiff[] bear[s] the burden of demonstrating that [he] ha[s] standing." *TransUnion LLC v. Ramirez*, 595 U.S. 413, 430-31 (2021). Here, Plaintiff fails to establish standing under Article III because he fails to allege that he has suffered an injury in fact that is "concrete"—in other words, an injury that is "real, and not abstract." *Lujan*, 504 U.S. at 560. Plaintiff cannot establish standing merely by alleging that Defendant violated statutory rights; indeed, both the Supreme Court and this Circuit have cautioned courts "not to 'treat an injury as 'concrete' for Article III purposes based only on Congress's say-so." *Popa*, 2025 WL 2448824, at * 5; *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) ("Under Article III, an injury in law is not an injury in fact."); *Spokeo*, 578 U.S. at 341 ("Article III standing requires a concrete injury even in the context of a statutory violation."). In considering whether a Plaintiff has alleged a "concrete" injury, courts in this Circuit evaluate whether the harm is the sort "that has traditionally been actionable in our nation's legal system." *Popa*, 2025 WL 2448824, at *4-5. In the privacy context, the

analysis considers whether the plaintiff alleges harm that is similar to "discrete privacy torts (not a general right to privacy)." *Id.* at *7.

The Complaint devotes several paragraphs to generalized statements about the value consumers place on their personal information and the policy interests enshrined in various privacy protection laws. *See, e.g.* Compl. ¶¶ 37-53. By contrast, the Complaint is remarkably sparse on details about any actual harm suffered by Plaintiff resulting from the specific practices he alleges. Instead, Plaintiff alleges generically that "Defendants violated [his] rights and invaded his statutorily conferred interest[.]" Compl. ¶ 23. Merely alleging injuries in law, rather than injuries in fact, however, does not suffice under Article III. *See Popa*, 2025 WL 2448824, at *4.

Plaintiff's most complete statement of his supposed injuries is articulated in the ECPA section of his Complaint (Count I), reciting a laundry list of generalized damages purportedly suffered by him and members of the putative class. Compl. ¶ 196. But courts in this Circuit have found each of these supposed injuries to be found non-cognizable under similar circumstances. First, Plaintiff's allegations that he suffered "emotional distress" as result of learning about the alleged disclosure is "too sparse and conclusory to support" a claim for damages. *See Sallie Holly v. Alta Newport Hosp., Inc.*, 2020 WL 6161457 (C.D. Cal. Oct. 21, 2020) (considering allegations that a plaintiff "experienced fear of identity theft, embarrassment, generalized anxiety … [and] emotional pain and upset"). Second, Plaintiff's allegations that Bosley received "substantial financial benefits" and "substantial, quantifiable value" from their alleged collection and use of Plaintiff's personal information—"without providing any value or benefit to Plaintiff"—fail to allege any concrete injury, because Plaintiff does not allege that any such benefits resulted in actual harm to Plaintiff. *See Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1182 (N.D. Cal. 2025) (plaintiffs failed to allege that they "suffered economic harm because Defendant unjustly profited from the use of their data"). Third, Plaintiff's allegation that Bosley "fail[ed] to provide full value of medical services, which

7

included duty to maintain confidentiality," fails because Plaintiff does not allege that he paid ***anything*** to Bosley for medical services—let alone that he "paid a premium for [Bosley]" to maintain confidentiality of information. *See Razuki v. Caliber Home Loans, Inc.*, 2018 WL 6018361, at *1 (S.D. Cal. Nov. 15, 2018) (finding that plaintiff "does not provide any information to show that he paid a premium for [defendant] to provide reasonable and adequate security measures."). Finally, courts routinely reject allegations, such as Plaintiff's, that the supposed disclosure of his personal information "diminished the value" of such information. *See, e.g. Razuki*, 2018 WL 6018361, at *1 (finding that "claim alleging diminution of value of [plaintiff's] personal data fails to allege enough facts to establish how his personal information is less valuable as a result of the breach"); *Corona v. Sony Pictures Ent., Inc.*, 2015 WL 3916744, at *4 (C.D. Cal. 2015) (alleged "diminution in the value and/or use of" PII was not a cognizable injury, absent authority "that an individual's personal identifying information has any compensable value in the economy at large").

Thus, Plaintiff fails to establish standing under Article III and for that reason alone, all of his claims should be dismissed.

## II.    Plaintiff's Consent Bars All of His Claims.

Each of Plaintiff's claims turns, in part, on lack of consent. For each claim, evidence of Plaintiff's consent to Bosley's use of tracking pixels provides either a statutory defense or precludes Plaintiff from plausibly alleging essential elements of his claims.

- **ECPA**: The ECPA prohibits the unauthorized "interception" of an "electronic communication," but authorizes interception of communications where "one of the parties to the communication has given prior consent to such interception," provided the interception is not "for the purpose of committing any criminal or tortious act[.]" 18 U.S.C. § 2511(1)(a)-(e); *see also* 28 U.S.C. § 2511(2)(d) ("It shall not be unlawful . . . to intercept a wire, oral, or electronic communication where . . . one of the parties to the

8

communication has given *prior consent* to such interception.");

- **CIPA**: Cal. Penal Code § 631(a) prohibits wiretapping "without the ***consent*** of all parties to the communication."  *See Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016) (finding that user consent is a defense under CIPA) (emphasis added).

- **Maryland Wiretap Act:**  Like CIPA, the Maryland Wiretap Act authorizes interception of a communication where all parties to the communication have given prior consent.  Md. Code, Cts. & Jud. Proc. § 10-402(c)(3) ("It is lawful under this subtitle for a person to intercept a . . . communication . . . where all of the parties to the communication have given *prior consent* to the interception").

- **Common Law Invasion of Privacy**:  To sufficiently plead invasion of privacy, Plaintiff must establish that he had a reasonable expectation of privacy with respect to the alleged intrusion.  Plaintiff's voluntary consent to exactly the conduct he alleges thus defeats this claim.  *See Smith v Facebook*, 262 F. Supp. 3d 943-955-56 (N.D. Cal. 2017) (enforcing plaintiff's consent to terms of service that disclosed use of tracking cookies) .

- **Maryland Consumer Protection Act:**  Plaintiff fails to allege a false or deceptive practice because the use of tracking pixels was disclosed to him, and he likewise cannot allege that he had any reasonable expectation of privacy with respect to the information allegedly disclosed.  *See, e.g.*, *Newkirk v. Harbor East Parcel, D-Hotel, LLC*, 2024 U.S. Dist. LEXIS 35881, at *12 (D. Md. Mar. 1, 2024) (hotel surcharge for cash payments was not an unfair and deceptive trade practice where website terms and conditions explained such surcharge).

- **CMIA:**  CMIA limits liability to ***unauthorized*** disclosures of medical information, and Plaintiff provided such authorization by consenting to Bosley's use of tracking pixels.  Cal. Civ. Code § 56.10(a).

9

- **Negligence:**  Plaintiff cannot establish that Bosley breached any legal duty owed to him, because he consented to the conduct he now claims was negligent.

- **Unjust Enrichment:**  Plaintiff cannot prevail on an equitable claim for unjust enrichment because his consent to Bosley's use of tracking pixels forecloses any claim that Bosley "unjustly" retained benefits from such conduct.

The Court should dismiss the Complaint in its entirety on this basis alone, because Plaintiff was informed of, and affirmatively consented to, the use of cookies and pixels on Defendants' website.  Where lack of consent is an element of the claim, it is appropriate for the court to consider factual matters relating to consent on a motion to dismiss.  *See, e.g. Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *2 (N.D. Cal. Mar. 9, 2021) (explaining that "consent generally defeats privacy claims" and granting motion to dismiss CIPA and invasion of privacy claims); *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025) (dismissing claims based on plaintiff's consent to defendant's use of tracking cookies and pixels ).

The Complaint contains a handful of conclusory allegations that Plaintiff and the putative class members did not consent to the alleged disclosure of the information at issue.  *See, e.g.,* Compl. ¶¶ 199-200.  Realizing that consent defeats his claims, Plaintiff scatters various allegations across the Complaint that his personal information was disclosed to Meta and Facebook "without consent."  *See, e.g.,* Compl. ¶¶ 143 (alleging Plaintiff had a "reasonable expectation that the information would remain confidential and that Defendants would not share [it] with third parties for a commercial purpose unrelated to patient care.").  None of these perfunctory allegations rise beyond the level of boilerplate, formulaic recitations of the "lack of consent" elements of the various statutes under which Plaintiff asserts claims.  That is not enough to state a plausible claim for relief.  *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020) (dismissing CIPA claim and noting

that "Plaintiffs' allegations that [recordings] 'were made without Plaintiffs' consent' is conclusory").

Defendants' Privacy Policy and Terms of Use squarely contradict Plaintiff's rote allegations of lack of consent. Courts consistently hold that privacy policies, like Bosley's, can establish consent under the ECPA and state wiretap statutes.[3] *See, e.g.* *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025) (dismissing CIPA, ECPA, and common law invasion of privacy claims where "a reasonable user would understand from the Privacy Policy that he or she is consenting to the use of cookies including by third parties"); *Smith v. Facebook, Inc.*, 745 F. App'x at 8 (9th Cir. 2018); *Silver v. Stripe, Inc.*, 2021 WL 3191752 at *4 (N.D. Cal. July 28, 2021) ("Courts consistently hold that terms of service and privacy policies . . . can establish consent to the alleged conduct challenged under various states wiretapping statutes and related claims"); *see also, e.g.*, *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, 2013 WL 5423918 at *12-13 (N.D. Cal. Sept. 26, 2013) (recognizing consent under federal and California acts can be express or implied).

The same is true for Plaintiff's common law invasion of privacy, negligence, and unjust enrichment claims. *See* *Kent v. Microsoft Corp.*, 2013 WL 3353875, at *6 (C.D. Cal. July 1, 2013) ("plaintiffs generally may not assert a wrong arising out of an action which they consented to").

## III. Plaintiff Fails to State Any of His Claims

### A. Plaintiff Fails to State a Wiretap Claim (Counts I, III & V).

---

[3] In order for consent to be "actual," the disclosures must "explicitly notify" users of the practice at issue. *In re Google Inc.*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013). Bosley's Privacy Policy explicitly notifies users that Bosley "use[s] third party cookies and other methods to track site activity and disclose it with third parties." *See* (Privacy Policy). That is exactly the practice at issue in this lawsuit. The ECPA's consent exception does not "require a more granular disclosure" than that contained in Bosley's Privacy Policy and Terms of Use. *See* *Lakes*, 777 F. Supp. 3d at 1057.

*i.   ECPA and CIPA Claims Fail Due to the Party Exception Rule.*

The ECPA and CIPA contain an "exemption from liability for a person who is a 'party' to the communication." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020).   Here, Plaintiff's wiretapping theory is explicitly premised on ***Bosley***—the website operator—being the entity who "intercepted" the communications at issue.  *See* Compl. ¶¶ 179 ("Defendants intercepted the 'contents' of Plaintiff's communications"); 188 ("Defendants intentionally intercepted the contents of Plaintiff's and the putative class members' electronic communications"); 190 ("Defendants intentionally used wire or electronic communications to intercept Plaintiff's [information]").

Because the party-exception rule precludes liability based on alleged "interception" of communications by a party to those communications, Plaintiffs' ECPA and CIPA claims must be dismissed.  *See, e.g.*, *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1120-21 (S.D. Cal. 2023) (dismissing ECPA and CIPA claims because defendant was the intended of the communications sent by plaintiff to defendant's website).

*ii.  Plaintiff's CIPA Claims Fail for Additional Reasons.*

First, CIPA Section 631 does not apply to internet communications.  Courts have interpreted the first clause of Section 631(a) to only apply to communications over telephones, not over the internet.  *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 743 (N.D. Cal. 2023); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129,1134-35 (E.D. Cal. 2021) (prohibition limited to communications in "telegraph or telephone" contexts).

Second, Plaintiff fails to plausibly allege any interception of a communication while it was "in transit."  A CIPA violation occurs when a person "attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is ***in transit*** or passing over any wire."  Cal. Penal Code s. 631(a); *see also* *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (explaining that

12

for a communication "to be intercepted," it "must be acquired during transmission, not while it is in electronic storage."). "This conclusion is consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival." *Id.* Plaintiff does not attempt to allege that the information allegedly sent to Meta and TikTok through the tracking pixels was "in transit." At most, Plaintiff alleges (under the heading of his separate Maryland Wiretap Act) that the communications at issue were intercepted "contemporaneously" with their transmission. Compl. ¶ 260. That is insufficient to plead that the interception was made "in transit." *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1084-85 (C.D. Cal. 2023) ("[b]are allegations of recording and creating transcripts [that] do not specifically allege that Plaintiffs' messages were intercepted while in transit"); *Hammerling v. Google LLC*, 2022 WL 17365255, at *10 (N.D. Cal. Dec. 1, 2022) (holding allegations that "Google collected 'real-time data' about [] use of third-party apps" insufficient to satisfy "in transit" element).

### iii. Plaintiff's Maryland Wiretap Act Claim Fails.

The Maryland Wiretap Act prohibits "(1) the interception or procurement of another to intercept any wire, electronic, or oral communication; (2) the willful disclosure of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication; and (3) the willful use of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication." Md. Code Ann., Cts. & Jud. Proc. § 10-402. Plaintiff's theory is that Defendants "intercept[ed]" the "contents" of "communications" by "aiding others (including Meta and TikTok) to secretly record the contents of Plaintiff and the putative class members' electronic communications." Compl. ¶ 255.

First, Plaintiff's Maryland Wiretap Act claim fails because all parties to any alleged "communication" provided prior consent to the supposed "interception." As

discussed *supra* pp. 7-8., the Maryland Wiretap Act authorizes interception of a communication "where all of the parties to the communication have given prior consent to the interception." *See* Md. Code Ann., Cts. & Jud. Proc. § 10-402(c)(3).

Second, Plaintiff fails to state a claim because he does not plausibly allege a contemporaneous "interception" of any communication under the statute. Md. Code, Cts. § Jud. Proc. § 10-401. To "intercept" a communication, the acquisition must occur contemporaneous with the transmission of the communication. *Martin v. State*, 96 A.3d 765, 776 (Md. Ct. App. 2014) (citation omitted). Plaintiff's theory is that Defendants "aided in" the "interception of contents" of communications when "others (including Meta and TikTok) [] secretly record[ed] the contents" of those communications. Compl. ¶ 255. But, apart from a single boilerplate allegation that Plaintiff's communications "were/are intercepted contemporaneously with their transmission" (Compl. ¶ 260), the Complaint says nothing about **when** Meta, TikTok, or any other party supposedly "intercepted" the communications. *Cf. Adler v. Community.com*, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021) (dismissing CIPA claim because plaintiff did not state a "plausible allegation that Defendant acted to learn the contents of the message while they were, in a technical sense, in transit or in the process of being received.").

Further, Plaintiff's claim under the Maryland Wiretap Act also fails because the supposed "intercepting devices," as alleged, would fall squarely within the statute's so-called "telephone exemption." The Maryland Wiretap Act only applies to "devices." *Schmerling v. Injured Workers' Ins. Fund*, 795 A.2d 715, 721 (Md. 2002). But the statute specifically excepts from its definition of "device" certain equipment or components thereof—like software code—used in a business's communications systems. To satisfy the "telephone exemption," "(1) the equipment must be a telephone instrument, equipment or other facility for the transmission of electronic communications, or any component thereof; and (2) the equipment must be used in the ordinary course of the subscriber's or user's business." *Id.* at 728 (quotation marks

omitted); *see also* Md. Code, Cts. & Jud. Proc. § 10-401(8).  Despite its name, the "telephone exemption" is not limited to telephones; to qualify, a device need only "further the use of or functionally enhance the []communications system." *Schmerling*, 795 A.2d at 726.  It does so if it has "a positive impact on the efficiency, clarity, cost, or any other factor by which one would measure the effects on a communications system." *Id.* (citing *Pascale v. Carolina Freight Carriers Corp.*, 898 F. Supp. 276, 281 (D.N.J. 1995)); *see also Adams v. State*, 424 A.2d 344 (Md. 1981) (finding an extension phone, which "allow[s] anyone in the room to hear the communication," fits within the telephone exemption because it "increase[s] the ability of the phone equipment to accommodate more parties to the communication.").

As alleged, the Meta Pixel and TikTok Pixel embedded on Bosley's website clearly satisfy the "telephone exception."  Indeed, Plaintiff alleges that Defendants "programmed the Website to include" the Meta Pixel and TikTok Pixel "to take advantage of the targeted advertising and other informational and analytical services offered by" Meta and TikTok, respectively.  *See* Compl. ¶¶ 91, 117.

### B.    Plaintiff's CMIA (Count II) Claim Fails.

Plaintiff's claim under California's Confidentiality of Medical Information Act, Cal. Civ. Code § 56 et seq. ("CMIA") fails for several reasons.

***First***, CMIA limits liability to ***unauthorized*** disclosures.  Cal. Civ. Code § 56.10(a).  As explained supra pp. 2-4, Plaintiff affirmatively authorized the use of tracking pixels to capture and transmit his activity on Bosley's website to third parties.  Therefore, Plaintiff cannot allege any unauthorized disclosure of confidential information.

***Second***, CMIA applies only to "medical information," *id.* §§ 56.10, 56.101, which CMIA defines to mean "individually identifiable information … regarding a patient's medical history, mental health application information, mental or physical condition, or treatment." *Id.* § 56.05(i).  "Individually identifiable" means "sufficient to allow identification of the individual, such as the patient's name[.]" *Id.*  Plaintiff

15

does not plausibly allege that Bosley disclosed any "medical information" under the meaning of the statute. At most, he alleges that Bosley disclosed to Meta and TikTok, via tracking pixels, (1) the fact that he scheduled a consultation for a hair transplantation; and (2) unique identifiers associating his activity on Bosley's website with his Meta and TikTok accounts. *See supra* p. 2. But the fact that Plaintiff sought a consultation for a potential hair transplantation surgery does not constitute information about his "medical history, mental health application information, mental or physical condition, or treatment." *See, e.g.*, *Wilson v. Rater8, LLC*, 2021 WL 4865930, at *4-5 (S.D. Cal. Oct. 18, 2021) (dismissing CMIA claim, finding that "treating physician names, medical treatment appointment information, and medical treatment discharge dates and times" does not constitute "medical information"); *Eisenhower Med. Ctr. v. Super. Ct.*, 172 Cal. Rptr. 3d 165, 169 (Cal. Ct. App. 2014) (disposing of CMIA claim, finding that PII and medical record numbers were not "medical information"); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123-24 (S.D. Cal. 2023) (dismissing CMIA claim in Pixel healthcare case, finding that "browsing activity . . . to 'research . . . doctors,' 'look for providers,' and 'search for medical specialists'" did not constitute "medical information").

**Third**, the CMIA provides that "information may be disclosed to a person or entity that provides billing, claims management, medical data processing, or other administrative services for providers of health care . . . shall not be further disclosed by the recipient in a way that would violate this part." Cal. Civ. Code § 56.10(c)(3). Plaintiffs allege that their data was disclosed "to take advantage of the targeted advertising and other informational and analytical services offered by" Meta and TikTok, respectively. See Compl. ¶¶ 91, 117. Those website and advertising services provided by Meta and TikTok to Bosley are "other administrative services" within the meaning of Cal. Civ. Code § 56.10(c)(3). *See Starbuck v. Kaiser Found. Health Plan, Inc.*, 275 Cal. Rptr. 444, 449 (Ct. App. 1990) (dismissing CMIA claim, stating, "service of professional photocopiers falls within the category of 'other

16

administrative services'"); *Emmerick v. Ridgecrest Reg'l Hosp.*, 2018 WL 784302, at *4 (E.D. Cal. Feb. 8, 2018) (dismissing CMIA claim under administrative services exemption, stating, "the facts alleged indicate the communications related to billing and payment"). Plaintiffs do not allege that any data disclosed to Meta or TikTok was further disclosed. Thus, Plaintiff's CMIA claim is barred by § 56.10(c)(3).

### C.    Plaintiff Fails To Plausibly Allege Negligence (Count IV)

To plead negligence, Plaintiff must plausibly allege "(a) a legal duty to use due care; (b) a breach of such legal duty; and (c) the breach as the proximate or legal cause of the resulting injury." *In re iPhone Application Litigation*, 844 F. Supp. 2d 1040, 1064 (N.D. Cal. 2012). In pleading that he suffered an "injury," Plaintiff must identify an "appreciable, nonspeculative, present harm." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 962 (S.D. Cal. 2012). In the data privacy context, courts routinely hold that "conclusory," "vague" or "boilerplate" allegations of damages are insufficient to sustain a negligence claim. *See Sallie Holly v. Alta Newport Hosp., Inc*, 2020 WL 6161457, at *1 (C.D. Cal. 2020).

As an initial matter, Plaintiff fails to plausibly allege a breach of any legal duty owed to him by the Defendants. As explained *supra* pp. 2-4, Plaintiff affirmatively authorized the disclosure of his information to third parties via tracking pixels on Bosley's website.

Plaintiff also fails to plausibly allege any harm sufficient to satisfy the damages element of his negligence claim. In alleging his negligence count, Plaintiff alleges only that the alleged unauthorized disclosure of his personal information would foreseeably "result in injury." Compl. ¶ 245. That sort of "[t]hreadbare recital of the elements" of Plaintiff's negligence claim "do[es] not suffice" under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678.

Nor do any of the other supposed "injuries" alleged elsewhere in the Complaint suffice to plead negligence. To the extent Plaintiff asserts that the supposed injuries

alleged elsewhere in the Complaint satisfy this element, these allegations do not attempt to attribute any such injuries to the conduct allegedly constituting negligence. *See, e.g.*, Compl. ¶ 196 (alleging damages "as a direct and proximate result of Defendants' invasion of privacy"). Moreover, the injuries Plaintiff alleges are too conclusory or speculative to state a claim for relief, or have otherwise been found non-cognizable under similar circumstances. *See, e.g.*, *Holly*, 2020 WL 6161457, at *1 (allegations that a plaintiff "experienced fear of identity theft, embarrassment, generalized anxiety ... emotional pain and upset", among other allegations, were "too sparse and conclusory to support" her claims for damages); *Medoff v. Minka Lighting, LLC*, 2023 WL 4291973 at *9 (C.D. Cal. May 8, 2023) (allegations that plaintiff suffered "anxiety and increased concerns for the loss of his privacy" were too "conclusory and vague" to sustain a negligence claim).

### D.      Plaintiffs' Claim Under The Maryland Consumer Protection Act ("MCPA") Fails

The MCPA prohibits a person from engaging "in any unfair, abusive, or deceptive trade practice" to sell consumer goods, Md. Code Ann., Com. Law § 13-303(1), and provides a private right of action to "recover for injury or loss sustained by [the plaintiff] as a result of" a prohibited practice," *id.* § 13-408. To state a claim under the MCPA, Plaintiffs must allege an (1) unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury. *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012).

#### 1.  Plaintiff Fails to Plead his MCPA Claim With Particularity.

Plaintiff's claim under the MCPA sounds in fraud, and is therefore subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). *See, e.g.*, Compl. ¶¶ 271, 277-78 (alleging that Defendants "fail[ed] to state and knowingly conceal[ed], suppress[ed], and omit[ed] material facts). To satisfy Rule 9(b), Plaintiff must "identify the who, what, when, where, and how of the misconduct charged, as well as

what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013).

### 2. Plaintiff Fails to Allege an "Unfair or Deceptive Practice."

Plaintiff cannot state a claim for violation of the MCPA, because he cannot plausibly allege "[f]ailure to disclose material facts that deceive or tend to deceive consumers." MD Code 13-301. Plaintiff's theory under the MCPA is that Defendants "fail[ed] to state and knowingly conceal[ed], suppress[ed], and omitt[ed] the material fact that Defendants was [sic] disclosing Plaintiff's . . . private communications to third parties." Compl. ¶ 271. This was allegedly a "material fact" because of "consumers' expectations that this type of information would remain private." Compl. ¶ 272. The practices Plaintiff alleges were deceptive, however, were fully disclosed to him through Bosley's Terms of Use and Privacy Policy. As such, there can be no deception, nor can Plaintiff have had any expectation that his activity on Bosley's website would remain private. *See Newkirk v. Harbor East Parcel, D-Hotel, LLC*, 2024 U.S. Dist. LEXIS 35881, at *12 (D. Md. Mar. 1, 2024) (hotel surcharge for cash payments was not an unfair and deceptive trade practice, where "the terms and conditions on the hotel's website state that the rates listed do not include possible fees or surcharges"). Similarly defective is Plaintiff's allegation that he "had no way of discerning Defendant's concealment . . . of [] material facts" because he "did not have access to Defendants' exclusive and superior knowledge" about the use of third party analytics and advertising tracking technology. Compl. ¶ 277. Discovery of that fact required no "exclusive and superior knowledge"—it required only that Plaintiff view the Privacy Policy. *See supra* pp. 2-4.

### 3. Plaintiff Fails to Allege Any Injury or Loss

Plaintiff's MCPA claim must also be dismissed because it fails to allege any ascertainable injury or loss. Recovery is only available under the MCPA's private right of action if the consumer "suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance" on the seller's statement

or omission. *See Twardzik v. HP Inc.*, No. 22-2650, 2023 U.S. App. LEXIS 23740, at *6 (3d Cir. Sep. 7, 2023) (citing *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 277 (Md. 2007)). Plaintiff alleges summarily that he "suffered ascertainable loss including, among other things, improper taking of [his] valuable data." Compl. ¶ 279. This type of "threadbare" recital of the elements of his MCPA claim does not suffice under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678.

### E.   Plaintiff Cannot Support A Claim For Unjust Enrichment.

"California does not recognize a separate cause of action for unjust enrichment," *Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 829 (N.D. Cal. 2022), but a court may "construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F. 3d 753, 762 (9th Cir. 2015). To allege unjust enrichment, a plaintiff must show (1) the receipt of a benefit by the defendant; and (2) unjust retention of the benefit – *i.e.*, retention of the benefit at the expense of the plaintiff. *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016).

In his unjust enrichment claim, Plaintiff seeks "disgorge[ment] in a common fund" of "all unlawful or inequitable proceeds that Defendants receive." Compl. ¶ 290. That is explicitly a request for equitable relief—effectively, restitution of the same legal damages Plaintiff pleads in his other claims. The Court should dismiss claims for equitable restitution of the same legal damages pleaded in Plaintiff's other claims. *Sonner v. Premier Nutrition Corp.*, 971 F. 3d 834, 844 (9th Cir. 2020) ("It is a basic doctrine of equity jurisprudence that courts of equity should not act … when the moving party has an adequate remedy at law.").

### F.   Plaintiff Cannot State A Claim For Invasion Of Privacy (Count VIII)

A claim for common law intrusion upon seclusion depends on "(1) the nature of any intrusion upon reasonable expectations of privacy, and (2) the offensiveness or seriousness of the intrusion, including any justification and other relevant interests." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 288 (2009).

20

***First***, Plaintiff cannot allege that he had any reasonable expectation of privacy with respect to the allegedly disclosed information.  Before Plaintiff submitted any personal information through Bosley's scheduling tool on his website, he was provided with clear notice that Bosley's website used cookies and tracking pixels.  *See supra* pp. 2-4.  In fact, in order to schedule a consultation for hair transplantation, Plaintiff was required to consent to Bosley's use of such technologies.  *Id.*  That is fatal to Plaintiff's ability to plausibly allege that he had a reasonable expectation of privacy, or that there was a serious invasion thereof.  *See Smith*, 262 F. Supp. 3d at 955-56 ("Plaintiff's consent … bars their common-law [invasion of privacy] claims."); *See Snipes v. Wilkie*, 2019 WL 1283936, at *7 (N.D. Cal. 2019) (dismissing intrusion upon seclusion claim where plaintiff voluntarily disclosed the information).

Further, courts routinely hold that there is no reasonable expectation of privacy in standard internet transmissions.  *See, e.g., People v. Nakai*, 183 Cal. App. 4th 499, 518 (2010); *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *1-2 (S.D. Cal. May 8, 2024) ("Generally, the internet is not a place where users have a reasonable expectation of privacy. . . . [A] number of courts have found that consumers do not have a reasonable expectation of privacy over their activity in that space." (collecting cases)); *Campbell v. Facebook*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) ("California appeals courts have generally found" no reasonable expectation that "Internet-based communications" will not be overheard or recorded, "because such communications can easily be shared by, for instance, the recipient(s) of the communications."); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017), *aff'd,* 745 F. App'x 8 (9th Cir. 2018); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1016-17, 1026 (N.D. Cal. 2012) (dismissing intrusion claim, finding no "'serious invasion' of a privacy interest" in a LinkedIn user's "browsing history" and "LinkedIn ID").

***Second***, Plaintiffs fail to allege any intrusion.  Again, Plaintiff provided his information to Bosley willingly and affirmatively consented to the use of tracking pixels.  *See supra* pp. 2-4.  That is not an intrusion.  *See Raines v. U.S. Healthworks*

*Med. Grp.*, 2021 WL 5763831, at *8 (S.D. Cal. Jan. 25, 2021) (dismissing intrusion claim, finding that obtaining information through questioning willfully answered was not an actionable intrusion), *aff'd* 2023 WL 6866339 (9th Cir. Oct. 18, 2023); *Linman v. Marten Transp., Ltd.*, 2023 WL 2562712, at *6 (W.D. Wis. Mar. 17, 2023) (granting motion to dismiss, because "[plaintiff] provided his personal information to [defendant] willingly, so it didn't intrude on his privacy by collecting it. The only 'intrusion' was the alleged breach by the hackers"); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 944 (N.D. Ill. Mar. 3, 2023) (dismissing intrusion upon seclusion claim in Pixel healthcare case, stating, "the harm for which [the hospital] is responsible, if any, is its disclosure of patient data . . . not the obtaining of that data. The actual intrusion upon patients' seclusion, via interception of their communications, is carried out by third parties"); *Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331, 342-43 (E.D. Pa. 2012) (dismissing intrusion claim, stating, "liability for intrusion upon seclusion cannot exist where a defendant legitimately obtains information from a plaintiff ... This is so even where those facts voluntarily offered are later disclosed to a third party, even by such highly visible means as newspaper publication").

Nor is Bosley's alleged disclosure of Plaintiffs' information an actionable intrusion. *See Banga v. Equifax Info. Servs. LLC*, 2015 WL 3799546, at *9 (N.D. Cal. June 18, 2015) (dismissing intrusion claim, stating, "The thrust of [plaintiff]'s allegations is not that [defendant] obtained unwanted access to data . . . but rather that it improperly disclosed data . . . . That is not an intrusion"); *Savala v. Freedom Commc'ns, Inc.*, 2006 WL 1738169, at *6 (Cal. Ct. App. June 27, 2006) (finding that "*publication* of a photograph of a crime victim taken in a public park, no matter how offensive or insensitive it may have been, was not an *intrusion*") (emphasis in original); *Mitchell v. U.S. Dep't of Agric. Farm Serv. Agency*, 2014 WL 7240671, at *3 (W.D. Wis. Dec. 17, 2014) (granting motion to dismiss, finding no intrusion in "[m]erely disclosing information that was not obtained by an intrusion").

***Third***, Plaintiff fails to plausibly allege that disclosure of his information was "highly offensive" to a reasonable person.  When determining whether an intrusion is "highly offensive," courts consider "the degree and setting of the intrusion," as well as "the intruder's motives and objectives." *Hernandez*, 47 Cal. 4th at 287.  Courts have repeatedly held that sharing web browsing information with third parties is not highly offensive.  *See Low*, 900 F. Supp. 2d at 1016-17 (using cookies to share visitors' browsing histories and LinkedIn IDs with third parties did not amount to a highly offensive disclosure of information); *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 973-74, 987 (N.D. Cal. 2014) (sharing identifying information, browsing habits, search queries, and demographic information was not highly offensive); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 294, n. 203 (3d Cir. 2016) ( (affirming dismissal against Google because "courts have long understood that tracking cookies can serve legitimate commercial purposes").

Additionally, disclosing information is not highly offensive when it is disclosed for a "legitimate business reason," as opposed to "socially repugnant or unprotected reasons" such as "harassment, blackmail, or prurient curiosity." *Hernandez*, 47 Cal. 4th at 97-98.  By Plaintiff's own admission, the purpose of Defendants' "to take advantage of the targeted advertising and other informational and analytical services offered by" Meta and TikTok, respectively.  Compl. ¶¶ 91, 117.  That is plainly a legitimate business reason and not a "highly offensive" intrusion.

## CONCLUSION

For the foregoing reasons, Plaintiff cannot state any valid claims against Defendant, and Bosley respectfully requests that the Court grant this Motion and dismiss the claims in Plaintiff's Complaint.

Dated: December 19. 2025                **SHOOK. HARDY & BACON L.L.P.**


                                        By:_____*/s/ Saman M. Rejali*_____
                                                Saman M. Rejali
                                                Rachel A. Straus

                                                Attorney for Defendants
                                                Bosley Inc. and Bosley Medical Group


### CERTIFICATE OF SERVICE

I, Saman M. Rejali, hereby certify that I served a true and correct copy of the foregoing on all parties of record via CM/ECF on December 19, 2025.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT