Frank S. Hedin (SBN 291289)
fhedin@hedinllp.com
HEDIN LLP
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107

*Attorney for Plaintiff and Putative Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALEXANDER SISTI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>BOSLEY INC.; and BOSLEY MEDICAL GROUP, a medical corporation;<br><br>Defendants. | Case No. 2:25-cv-10669-JFW-DFM<br><br>Assigned to: Hon. John F. Walter<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date: April 13, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom 7A – 7th Floor |

# **TABLE OF CONTENTS**


INTRODUCTION ........ 1

BACKGROUND ........ 1

LEGAL STANDARD ........ 3

ARGUMENT ........ 4

I. Plaintiff Has Article III Standing ........ 4

II. Defendants' Consent Argument Fails ........ 8

A. Judicial Notice is Not Appropriate ........ 8

B. Defendants' Consent Argument Relies Upon Contested Facts ........ 10

C. Plaintiff Did Not Manifest Assent to the Terms of Service ........ 11

D. Defendants' Terms of Service and Privacy Policy Do Not Address the Illegal Disclosures ........ 12

III. Plaintiff Plausibly Alleges Each of His Claims ........ 13

A. Plaintiff States Claims Under the Each of the Wiretap Statutes ........ 13

1. Plaintiff States a Claim Under Maryland's Wiretap Act ........ 13

2. The Party Exception Rule Does Not Apply to Plaintiff's ECPA and CIPA Claims ........ 15

3. Plaintiff Alleges His Information was Intercepted "In Transit" Under CIPA ........ 17

B. Plaintiff States a Claim Under the MCPA ........ 18

C. Plaintiff States a Claim Under the CMIA ........ 19

D. Plaintiff States a Claim for Negligence ........ 22

E. Plaintiff States a Claim for Invasion of Privacy ........ 23

F. Plaintiff States a Claim for Unjust Enrichment ........ 24

CONCLUSION ........ 25

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*A.J. v. LMND Med. Grp.*,
2024 WL 4579143 (N.D. Cal. Oct. 25, 2024) .......... 24

*Adler v. Community.com*,
2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) .......... 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 3

*Balestrieri v. SportsEdTV, Inc.*,
2025 WL 2776356 (N.D. Cal. 2025) .......... 1

*Barbour v. John Muir Health*,
2023 WL 2618967 (Cal. Super. Ct., 2023) .......... 20

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) .......... 22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 3

*Berman v. Freedom Financial Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... 11, 12

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011) .......... 18

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) .......... 4

*Camplisson v. Adidas America, Inc.*,
2025 WL 3228949 (S.D. Cal. 2025) .......... 4, 7

*Cappello v. Walmart Inc.*,
2019 WL 11687705 (N.D. Cal. Apr. 5, 2019) .......... 9

*Corona v. Sony Pictures Ent., Inc.*,
2015 WL 3916744 (C.D. Cal. June 15, 2015) .......... 6

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023)....................20

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023)....................20, 21

*Cullinane v. Uber Tech., Inc.*,
893 F.3d 53 (1st Cir. 2018)....................12

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024)....................17

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023)....................17

*Dahlia v. Rodriguez*,
735 F.3d 1060 (9th Cir. 2013)....................10, 11

*Dent v. Nat'l Football League*,
902 F.3d 1109 (9th Cir. 2018)....................22

*Doe v. Regents of Univ. of California*,
672 F. Supp. 3d 813 (N.D. Cal. 2023)....................22, 24

*Doe v. Shady Grove Reproductive Science Ctr., P.C.*,
2025 WL 2781542 (D. Md. 2025)....................8, 13, 19, 24

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp.3d 814 (E.D. Cal. June 9, 2025)....................16, 22, 24

*Eisenhower Med. Ctr. v. Superior Court*,
226 Cal. App. 4th 430 (2014)....................21

*Emmerick v. Ridgecrest Reg'l Hosp.*,
2018 WL 784302 (E.D. Cal. 2018)....................21

*Erickson v. Pardus*,
551 U.S. 89 (2007)....................3

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D. Cal. 2025)....................4, 6, 7

*Gaker v. Citizens Disability, LLC*,
2023 WL 1777460 (D. Mass. Feb. 6, 2023)....................10

*Heiting v. Taro Pharmaceuticals USA, Inc.*,
2024 WL 3738055 (C.D. Cal. July 31, 2024) .......... 17

*Hines v. Overstock.com, Inc.*,
668 F. Supp. 2d 362 (E.D.N.Y. 2009) .......... 10

*Hyde v. Maryland State Bd. of Dental Examiners*,
2018 WL 5786114 (D. Md. Nov. 5, 2018) .......... 18

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) .......... 4, 6, 15, 18

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
440 F. Supp. 3d 447 (D. Md. 2020) .......... 19

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) .......... 9, 22, 23

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 23, 24

*Jackson v. Fandom, Inc.*,
2023 WL 4670285 (N.D. Cal. July 20, 2023) .......... 9

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 8, 9, 10

*Knievel v. ESPN*
393 F.3d 1068 (9th Cir. 2005) .......... 3

*Krottner v. Starbucks Corporation*,
406 F. App'x 129 (9th Cir. 2010) .......... 6

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 4

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) .......... 15

*Maree v. Deutsche Lufthansa AG*,
2021 WL 267853 (C.D. Cal. Jan. 26, 2021) .......... 12

*Matera v. Google Inc.*,
2016 WL 5339806 (N.D. Cal. 2016) .......... 5

*Mitchell v. Sonesta Int'l Hotels Corp.*,
2024 WL 4471772 (C.D. Cal. Oct. 4, 2024) .......... 15

*Moreno v. Hanford Sentinel, Inc.*,
172 Cal. App. 4th 1125 (2009) .......... 6

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 11

*Pena v. GameStop, Inc.*,
670 F. Supp.3d 1112 (S.D. Cal. 2023) .......... 16

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 7

*Razuki v. Caliber Home Loans, Inc.*,
2018 WL 6018361 (S.D. Cal. Nov. 15, 2018) .......... 6

*R.C. v. Sussex Publishers, LLC*,
2025 WL 1735994 (N.D. Cal. June 23, 2025) .......... 17

*R.S. v. Prime Healthcare Servs., Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025) .......... 15

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 17

*Rojas v. GoSmith, Inc.*,
2020 WL 831585 (N.D. Ind. Feb. 20, 2020) .......... 12

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 16

*Schmerling v. Injured Workers' Ins. Fund*,
795 A.2d 715 (Md. 2002) .......... 13, 14

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... 24

*Shah v. MyFitnessPal, Inc.*,
2026 WL 216334 (N.D. Cal. Jan. 27, 2026) .......... 7

*Specht v. Netscape Commc'ns Corp.*,
306 F.3d 17 (2d Cir. 2002) .......... 10

*St. Aubin v. Carbon Health Technologies, Inc.*,
2024 WL 4369675 (N.D. Cal. 2024) .......... 20, 21

*Starbuck v. Kaiser Found. Health Plan, Inc.*,
275 Cal. Rptr 444 (1990) .......... 21

*Stasi v. Inmediata Health Group Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) .......... 5, 7, 22, 23

*Strong v. LifeStance Health Grp. Inc.*,
2025 WL 317552 (D. Ariz. Jan. 28, 2025) .......... 21

*Thornton v. Mindvalley, Inc.*,
2025 WL 877714 (N.D. Cal. Feb. 14, 2025) .......... 9

*Torres v. Prudential Financial, Inc.*,
2025 WL 1135088 (N.D. Cal. 2025) .......... 18

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 1, 5, 6, 7

*Twardzik v. HP Inc.*,
2023 WL 5770999 (3d. Cir. 2023) .......... 19

*Virgil v. Time, Inc.*,
527 F.2d 1122 (9th Cir. 1975) .......... 6

*Wilson v. Rater8, LLC*,
2021 WL 4865930 (S.D. Cal. 2021) .......... 20

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 16

**Statutes**

Cal. Civ. Code § 1714(a) .......... 22

California Confidentiality of Medical Information Act, Cal. Civ. Code § 56 .......... 1, 19, 21

California Invasion of Privacy Act, Cal. Penal Code §§ 631, 632 .......... *passim*

Electronic Communications Privacy Act, 18 U.S.C. § 2511 .......... *passim*

Maryland Consumer Protection Act .......... 1, 8, 18, 19

Maryland Wiretap Act, Md. Code Ann., Cts. & Jud. Proc. § 10-402 .......... *passim*

**Rules**

Fed. R. Civ. P. 12(b)(6) .......... 1

Fed. R. Evid. 201(b) .......... 8

## INTRODUCTION

Defendants Bosley Inc. and Bosley Medical Group (collectively, "Defendants") move the Court to dismiss Plaintiff Alexander Sisti's ("Plaintiff") First Amended Class Action Complaint (the "Complaint") under three theories: (1) that Plaintiff lacks Article III standing to assert his claims, (2) that Plaintiff consented to the disclosures alleged in the Amended Complaint, and (3) that Plaintiff fails to state a claim under Fed. R. Civ. P. 12(b)(6). *See* ECF No. 50.

The motion should be swiftly denied. First, Plaintiff pleads a concrete injury that confers Article III standing under *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Second, Defendants' consent defense cannot be resolved on a motion to dismiss—and even if it could, Defendant has not shown that Plaintiff consented to the disclosures and interceptions alleged in the Complaint. Third, Plaintiff plausibly alleges each claim.

## BACKGROUND

This is a case about Defendants' systematic violations of consumers' privacy rights, as established by the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1), *et seq.* ("ECPA"), California Confidentiality of Medical Information Act, Cal. Civ. Code § 56, *et seq.* ("CMIA"), California Invasion of Privacy Act, Cal. Penal Code §§ 631, 632 ("CIPA"), Maryland Consumer Protection Act ("MCPA") and the Maryland Wiretap Act, Md. Code Ann., Cts. & Jud. Proc. § 10-402 ("Maryland Wiretap Act") and common law.

Defendants run a nationwide chain of over seventy surgical hair transplantation clinics. ECF No. 41, ¶¶ 24-25. Defendants maintain a website, www.bosley.com (the "Website"), where patients may schedule appointments at any of these clinics. *Id.*, ¶ 25.

Unbeknownst to patients, Defendants configured the Website to transmit protected personal information to third-party advertising companies using tracking pixels from Meta Platforms, Inc. ("Meta") and TikTok, Inc. ("TikTok"). *Id.*, ¶ 8. To create an account with Meta or TikTok, users must provide their first and last name, email address, birthdate, and phone number or email. *Id*. A unique, persistent numerical identifier is then assigned to their account—a Facebook ID ("FID") in the case of Meta, and a TikTok User ID ("User ID") in the case of TikTok. *Id.*, ¶¶ 55, 111. When either pixel is installed on a website, Meta or TikTok can match a user's activity on the website to their respective persistent identifiers—thus personally identifying them. *Id.*, ¶¶ 56, 59-61, 109-113.

Both the Meta Pixel and TikTok Pixel transmit Event Data to their respective developers. Event data is information linking users to specific actions they take on a website. *Id.*, ¶ 62. For example, the Meta Pixel's "Schedule" Event shares with Meta "[t]he booking of an appointment to visit one of your locations." *Id.*, ¶ 63; *see also id*. at ¶ 108 (listing the TikTok Pixel's Events). Whenever any Event is triggered, the website hosting the tracking pixel transmits to Meta or TikTok: (1) Event Data, (2) the FID or User ID, and (3) the URL of the webpage where the Event occurred. *Id.*, ¶ 67, 103-117.

Defendants installed the Meta Pixel and TikTok Pixel on the Website's scheduler page and configured Events to disclose when someone booked an appointment. *See id.*, ¶¶ 71-102, 118-130. Clicking the "Book Appointment" button at the end of the scheduler triggers the Meta Pixel's "Scheduled Consult" and "Submit Application" Events. *Id.*, ¶¶ 86, 87. The same actions triggers the TikTok Pixel's "Complete Registration" Event. *Id*. at ¶¶ 122.

Defendants also enabled the TikTok Pixel's "Advanced Matching" capabilities. In doing so, they instructed TikTok to match email addresses and phone numbers entered into form fields on the scheduler application to User IDs. *Id.*, ¶ 112-113; 116, 120, 124. This enables TikTok to personally identify patients making appointments even when those patients are not logged into TikTok. *Id.*, ¶ 112-113.

By using these technologies, Defendants disclosed at least the following information to Meta and TikTok: (1) personal identifiers sufficient to identify the patient (e.g., FIDs, User IDs, email addresses, phone numbers); (2) the fact that the patient booked an appointment; (3) the location of the surgical hair transplantation clinic where the patient booked the appointment; and (4) the URL of the webpage where they booked the appointment. *Id.*, ¶¶ 93, 130.

## LEGAL STANDARD

In resolving a Rule 12(b)(6) motion, a court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007). It must construe those allegations "in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). The pleadings need only suggest a "plausible" scenario showing that the plaintiff is "entitled to relief." *Twombly*, 550 U.S. at 556-557. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

It is well-established that medical providers cannot use internet tracking technologies to disclose their patients' protected health information. When someone books a consultation with a surgical hair transplantation clinic, they expect that information to remain confidential—that's common sense. It is also the letter of the law. Defendants' arguments for dismissal fail and their motion should be denied.

### I. Plaintiff Has Article III Standing.

Plaintiff has Article III standing to assert his claims. A plaintiff must meet three elements to establish standing: (1) an "injury in fact," (2) a "causal connection between the injury and the conduct complained of," and (3) likelihood "that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Defendants focus on injury in fact. *See* ECF No. 17 at 5-7.

Plaintiff has plausibly alleged injuries in fact. Courts routinely find that similar allegations involving privacy harms confer standing. *See, e.g., In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 598 (9th Cir. 2020) (plaintiffs had standing under ECPA, CIPA, and common law allegations of invasion of privacy, intrusion upon seclusion, and unjust enrichment); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020) (finding standing under ECPA and CIPA); *Camplisson v. Adidas America, Inc.*, 2025 WL 3228949 at *5 (S.D. Cal. 2025) (finding standing where the plaintiff brought a CIPA claim based on a website's use of the TikTok Pixel). This is especially true when the privacy harms involve healthcare information. *See, e.g.*, *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368 at *5-*6 (N.D. Cal. 2025) (collecting cases).

An injury in fact must be "concrete, particularized, and actual or imminent." *TransUnion*, 594 U.S. 413, 423 (2021). Defendants' argument centers on the "concreteness" requirement. *See* ECF No. 50-1 at 7. In *TransUnion*, the Supreme Court recognized that "[v]arious intangible harms can also be concrete" including "reputational harms, disclosure of private information, and intrusion upon seclusion." 594 U.S. at 425. Crucial to the analysis is "whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.* at 424.

Plaintiff alleges harms conferring a concrete injury under *TransUnion*. First, his statutory claims each have a common law analogue—invasion of privacy. The wiretap claims are brought under statutes which extend the tort of invasion of privacy to electronic communications. *See, e.g., Matera v. Google Inc.*, 2016 WL 5339806 at *10 (N.D. Cal. 2016) ("violations of the Wiretap Act and CIPA are similar to common law invasion of privacy in both their substantive prohibitions and their purpose"). The CMIA was passed to codify common-law privacy rights surrounding the public disclosure of private facts. *See Stasi v. Inmediata Health Group Corp.*, 501 F. Supp. 3d 898, 911 (S.D. Cal. 2020). Plaintiff also brings common law tort claims, which require no analogue.

Second, Plaintiff alleges monetary harms. *See TransUnion*, 594 U.S. at 424 ("monetary harms" are "obvious . . . traditional tangible harms."). As alleged, Plaintiff's health data has monetary and commercial value. *See, e.g.,* ECF No. 41, ¶¶ 36-52; 153.

Plaintiff alleges Defendants deprived him of that monetary value without compensation. *See, e.g.*, ECF No. 41, ¶ 289-292.[1]

Third, Plaintiff alleges invasions of privacy. *See TransUnion*, 594 U.S. at 425 (listing "disclosure of private information" and "intrusion upon seclusion" as sufficiently concrete harms). "[F]our separate torts are included within the broader designation of invasion of privacy." *Virgil v. Time, Inc.*, 527 F.2d 1122, 1125 (9th Cir. 1975). Those are: "(1) intrusion into private matters; (2) public disclosure of private facts; (3) publicity placing a person in a false light; and (4) misappropriation of a person's name or likeness." *Moreno v. Hanford Sentinel, Inc.*, 172 Cal. App. 4th 1125, 1129 (2009). Plaintiff alleges harms stemming from intrusion into private matters and public disclosure of private facts, injuries-in-fact under *TransUnion*. *See* 594 U.S. at 425; *Gabrielli*, 2025 WL 2494368 at *5 ("The Court recognized that 'intrusion upon seclusion' is included among those traditionally recognized harms.).

Fourth, *TransUnion* recognized that "Congress may elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." 594 U.S. at 425. Similarly, "state law can create interests that support standing in federal

[1] Plaintiff needs not allege that he "paid a premium" to "maintain confidentiality of information" to establish monetary harm, as Defendants claim. *See* ECF No. 50-1 at 9. Even Defendants' cited cases show the opposite. *Corona v. Sony Pictures Ent., Inc.*, No. 14-cv-09600 RGK EX, 2015 WL 3916744, at *3 (C.D. Cal. June 15, 2015) ("The Court finds that Plaintiffs have Article III standing . . . ."); *Razuki v. Caliber Home Loans, Inc.*, No. 17-cv-1718-LAB (WVG), 2018 WL 6018361, at *1 (S.D. Cal. Nov. 15, 2018) ("The Court made it clear that Razuki's negligence claim was essentially indistinguishable from *Krottner v. Starbucks Corporation*, 406 F. App'x 129, 131 (9th Cir. 2010), in which the Ninth Circuit found the risk of identity theft following a data breach sufficient to supply an injury-in-fact for standing. . . .").

courts." *In re Facebook*, 956 F.3d at 599. "Congress and the California legislature intended to protect . . . historical privacy rights when they passed the Wiretap Act . . . and CIPA." *Id.* at 598 (affirming Article III standing in tracking pixel case alleging violations of ECPA, CIPA, and invasion of privacy); *Camplisson*, 2025 WL 3228949 at *5–6 ("Plaintiffs' claim of privacy harms from the Trackers fall within the scope of [CIPA], and analysis of legislative intent does not indicate a lack of standing."); *Inmediata Health Group Corp.*, 501 F. Supp. 3d at 911 (similar for CMIA claims). Plaintiff's harms track precisely onto those identified as concrete by the Supreme Court in *TransUnion*.

Defendants' heavy reliance on *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. Aug. 26, 2025) is badly misplaced. In *Popa*, the plaintiff visited a pet supply website. *Id*. at 786. She alleged disclosure of the fact that she "brow[s]ed for pet supplies" and "communicated with [the] website by using her mouse to hover and click on certain products."[2] *Id*. The Ninth Circuit found no Article III standing because "no embarrassing, invasive, or otherwise private information" was disclosed. *Id*. at 791.

For Article III purposes, sharing that someone "brow[s]ed for pet supplies" is a world apart from disclosing—as alleged here—that a person scheduled a consultation with a surgical hair transplantation clinic. *See id*. at 786. Since *Popa* was decided, courts within this Circuit have readily reaffirmed that health-related disclosures confer standing. *See, e.g.*, *Gabrielli*, 2025 WL 2494368 at *7 ("Haleon's websites involve healthcare, and Popa challenged a pet food supply website's tracking practices. Whatever information users'

---

[2] Further, *Popa* concerned a different technology—session replay—which courts have since distinguished from the type of pixel -based disclosures alleged here. *See* *Camplisson*, 2025 WL 3228949 at *5.

input into Haleon's website is likely more sensitive than what the plaintiffs in *Popa* inputted into those websites."); *Shah v. MyFitnessPal, Inc.*, No. 25-CV-04430-PCP, 2026 WL 216334, at *3 (N.D. Cal. Jan. 27, 2026) (similarly distinguishing *Popa*). So, too, here.

This is not a marginal case. Plaintiff's allegations fall squarely within the mainstream of cases finding Article III standing in pixel-based disclosures of health-related information. *See, e.g.*, *Doe v. Shady Grove Reproductive Science Center, P.C.*, No. 24-cv-2368-ABA, 2025 WL 2781542, at *2-*3 (D. Md. Sept. 30, 2025) (denying motion to dismiss Maryland Wiretap Act, MCPA, and common law claims on highly analogous allegations concerning the use of tracking pixels to disclose personally-identifying information and "the fact that Plaintiffs had scheduled appointments or contacted Shady Grove for fertility treatment."). Plaintiff alleges concrete harms under Article III.

**II. Defendants' Consent Argument Fails.**

Defendants argue that Plaintiff consented to the disclosures alleged in the Complaint and that his claims are therefore barred. *See* ECF No. 50-1, at 9-12. This argument fails for at least four separate reasons, as shown below.

**A. Judicial Notice is Not Appropriate.**

First, Defendants' request for judicial notice should be denied. Defendants ask the Court to take judicial notice of three exhibits: Bosley's Terms of Service, Privacy Policy, and a screenshot of the scheduler webpage. *See* ECF Nos. 50-3—50-5. Defendants argue that these Exhibits establish Plaintiff's consent to Defendants' disclosure of his protected personal information.

Courts may take judicial notice of matters either "generally known within the trial court's territorial jurisdiction" or which "can be accurately and readily determined from

sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). However, a court may not judicially notice facts subject to reasonable dispute. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). None of Defendants' Exhibits are appropriate for judicial notice because their accuracy is disputed. *See id.*

Plaintiff disputes the accuracy of the Exhibits. "The simple act of posting something publicly on the Internet is insufficient assurance of an exhibit's accuracy." *Cappello v. Walmart Inc.*, 2019 WL 11687705, at *3 (N.D. Cal. Apr. 5, 2019). The Exhibits are dated to December 19, 2025, meaning they do not necessarily reflect the content and appearance of the scheduler page accessible on the Website when Plaintiff scheduled his appointment in 2024. *See* ECF No. 50-6 (Defendants' counsel's declaration that the screenshots were taken on December 19, 2025). Because there is reasonable dispute over whether the Exhibits reflect the content and appearance of the documents when Plaintiff accessed the scheduler page, judicial notice is inappropriate. *See, e.g., Jackson v. Fandom, Inc.*, 2023 WL 4670285, at *2 (N.D. Cal. July 20, 2023) (denying judicial notice where "it is unclear whether the webpages, Terms of Use, and Privacy Policy submitted by Fandom are the same versions that may have been available to Jackson when she registered as a user."); *Cappello*, 2019 WL 11687705 at *3 (denying judicial notice of the purchase confirmation page, Terms of Use, Privacy Policy, and Notices on Walmart's website because the facts in the exhibits "cannot be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Thornton v. Mindvalley, Inc.*, 2025 WL 877714, at *3 (N.D. Cal. Feb. 14, 2025) (similar).

**B. Defendants' Consent Argument Relies Upon Contested Facts.**

Even if the Court judicially notices Defendants' exhibits, the question of whether Plaintiff gave his consent is unripe for resolution at the pleading stage. *See In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1003 (N.D. Cal. 2024) ("As with intent, whether plaintiffs consented to having their data collected is a question of fact."). It is axiomatic that resolution of factual disputes is not permitted on a Rule 12(b)(6) motion. *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013). As the Ninth Circuit has stated, "[s]ubmitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint." *Khoja*, 899 F.3d at 1003; *see also Balestrieri v. SportsEdTV, Inc.*, 2025 WL 2776356, at *2 (N.D. Cal. 2025). On this basis alone, Defendant's consent argument fails.

Defendants' consent defense depends on several disputed factual questions. First, whether Defendants' Exhibit A accurately represents the scheduler page's appearance when Plaintiff scheduled his consultation. *See supra* at 8-9. Second, whether Plaintiff had actual notice of the Terms of Service and Privacy Policy—nothing in the record indicates whether Plaintiff actually saw any reference to those documents.

Third, what type of device Plaintiff used to access the scheduler page. Defendants do not specify the type of device used to generate the screenshot included as Exhibit A. *See* ECF 50-3. However, the formatting suggests it was taken on a laptop or desktop computer. *Id*. Plaintiff may have accessed the scheduler page on a mobile device or a tablet, meaning the reference to the Terms of Service and Privacy Policy may not have even been visible on his screen without scrolling down. *See, e.g.*, *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 32 (2d Cir. 2002) ("there is no reason to assume that

viewers will scroll down to subsequent screens simply because screens are there . . . .") (applying California law); *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009) (finding no notice when plaintiff "could not even see the link to them without scrolling down to the bottom of the screen – an action that was not required to effectuate her purchase."); *Gaker v. Citizens Disability, LLC*, No. 20-CV-11031-AK, 2023 WL 1777460, at *6 (D. Mass. Feb. 6, 2023) (similar). Since the Court cannot resolve these, among other, factual questions at the pleading stage, it should not reach the substance of Defendants' consent argument. *See Dahlia*, 735 F.3d at 1076.

**C. Plaintiff Did Not Manifest Assent to the Terms of Service.**

Even if the Court judicially notices Defendants' submissions and reaches the consent argument, that defense fails because Plaintiff never consented to the Terms of Service or Privacy Policy. Without a showing of actual notice—and there is none here—a user of a website is only bound by the website's terms if "a reasonably prudent user [would be put] on inquiry notice of the terms of the contract." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014). Defendants' Terms of Use and Privacy Policy are contained in a "browsewrap" agreement, wherein the terms "are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website." *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). With this type of agreement, Defendants must meet two requirements to establish inquiry notice: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id*. at 856. Defendants make neither showing.

First, Defendants' Exhibit A shows that the Website did not provide "reasonably conspicuous notice" of the Terms of Service and Privacy Policy. The links to the Terms of Service and Privacy Policy are found in extremely small font in the last sentence of the second paragraph beneath the much larger "Next Step" button. *See* ECF No. 50-3.[3] Similar designs have been held to not provide "reasonably conspicuous" notice. *See, e.g.*, *Maree v. Deutsche Lufthansa AG*, No. SA-cv-20885, 2021 WL 267853, at *4 (C.D. Cal. Jan. 26, 2021) (hyperlink appearing on a "cluttered page" between lines of "extraneous" text was not conspicuous); *see also* *Cullinane v. Uber Tech., Inc.*, 893 F.3d 53, 63 (1st Cir. 2018).

Second, the scheduler page does not require any action to "unambiguously manifest[] . . . assent." *Id*. *Berman* requires that the "consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." 30 F.4th at 856. The scheduler page imposes no such requirement, meaning it fails to provide inquiry notice as a matter of law. *See id*.; *Rojas v. GoSmith, Inc.*, No. 2:17-cv-281, 2020 WL 831585, at *4 (N.D. Ind. Feb. 20, 2020).

**D. Defendants' Terms of Service and Privacy Policy Do Not Address the Illegal Disclosures.**

Finally, any consent purportedly given by Plaintiff did not extend to Defendants' use of tracking pixels to disclose his protected health information. At most, the Terms of Service and Privacy Policy disclose that third-party tracking technologies "may be" used—but they do not disclose that protected health information will be sent to third parties. *See* ECF No. 50-1, at 4-5. The Privacy Policy largely addresses what information

[3] The first paragraph apparently presents only Google's Privacy Policy and Terms of Service, as applicable to its reCAPTCHA service, and Defendants make no argument that they are beneficiaries of those terms. *Id.*

Defendants "collect"—not information they *disclose*. ECF No. 50-5, at 4-17. The section on "Disclosure of Personal Information" is less than two pages long and nowhere acknowledges disclosing persistent personal identifiers, the fact that someone scheduled a consultation, the location of the consultation, or any other sensitive or protected health information. *See id*. at 17-18. Defendants' consent argument should be rejected.

**III. Plaintiff Plausibly Alleges Each of His Claims.**

**A. Plaintiff States Claims Under Each of the Wiretap Statutes.**

**1. Plaintiff States a Claim Under Maryland's Wiretap Act.**

Plaintiff plausibly alleges a Maryland Wiretap Act claim. *See, e.g.*, Shady Grove, 2025 WL 2781542 at *3-*8 (denying a motion to dismiss Maryland Wiretap Act claims where the plaintiff alleged disclosure of "the fact that Plaintiffs had scheduled appointments or contacted Shady Grove for fertility treatment" through tracking pixels). Defendants present three arguments in support of dismissal. Each should be rejected.

First, Defendants argue that tracking pixels fall under the Maryland Wiretap Act's "telephone exemption." ECF No. 50-1, at 13 – 14. The Maryland Wiretap Act makes it unlawful to "willfully intercept . . . any wire, oral, or electronic communication." Md. Code, Cts. § Jud. Proc. § 10–402(a)(1). It defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." *Id.* § 10–401(3). The "telephone exemption" excludes from the definition of "devices" any "telephone or telegraph instrument, equipment or other facility for the transmission of electronic communications, or any component thereof[.]" *Id*. § 10-401(8)(i).

The "telephone exemption" does not apply. Defendants' argument is premised on a profound misreading of *Schmerling v. Injured Workers' Ins. Fund*, 795 A.2d 715 (Md. 2002). In *Schmerling*, the court reasoned that "to be deemed telephone equipment, the equipment must further the use of or functionally enhance the telecommunications system." *Id*. at 453. It wrote that "[t]he utility of the add-on equipment must have some relation to the *enhancement* of the communication system", citing extension and speaker phones as examples. *Id*. at 454 (emphasis added).

However, the court stated, "a device placed on the line in order to receive the communication during its transmission" does not fall within the exemption. *See id*. at 455 (internal quotation marks and citation omitted). Accordingly, the Racal system at issue in *Schmerling* fell outside the exemption because it was "only capable on *monitoring* the telephone transmissions." *Id*. at 456 ("the Racal system . . . does not enhance communication or advance the efficient use of the telecommunications."). Defendants omit this holding from their brief entirely. *See* ECF No. 50-1.

The Meta Pixel and TikTok Pixel are equivalent to the Racal system. The pixels do not permit any additional person to *participate* in the two-way functionality of the communications system, as do speaker phones and extension phones. *See id*. at 454. Instead, they are merely "device[s] placed on the line in order to receive the communication during its transmission." *See id*. at 455. They fall well outside of the "telephone exemption" under *Schmerling*.

Second, Defendants again argue that Plaintiff consented to the interception, which fails for the reasons detailed above. *See supra* at 8-12.

Third, Defendants argue that Plaintiff fails to allege that his communications were contemporaneously intercepted. ECF No. 50-1, at 14. In support, they rely on *Adler v. Community.com*, which involved the interception of text messages only after the messages were received, not at the moment of transmission. 2021 WL 4805435 at *3 (C.D. Cal. Aug. 2, 2021). By contrast, Plaintiff repeatedly alleges that the Meta and TikTok Pixels "contemporaneously" intercept the contents of Plaintiff's communications as they are transmitted to Defendants. ECF No. 41, ¶¶ 82, 86-87, 122-123. That is more than enough. *See, e.g.*, *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *4 (N.D. Cal. Sept. 16, 2024); *Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772 at *8 (C.D. Cal. Oct. 4, 2024).

### 2. The "Party Exception" Rule Does Not Apply to Plaintiff's ECPA and CIPA Claims.

Despite Defendants' averments, the "party exception" rule does not defeat Plaintiff's ECPA or CIPA claims. The ECPA's party exception provides that "[i]t shall not be unlawful . . . for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication[.]" 18 U.S.C. § 2511(2)(d). Similarly, CIPA generally applies to third parties, not participants. *In re Facebook*, 956 F.3d at 607. However, California Penal Code § 631(a) provides that a participant to the communication "who aids, agrees with, employs, or conspires with" a third party to violate § 631(a) is also liable under CIPA.

First, the crime-tort exception applies to Plaintiff's ECPA claims. The crime-tort exception is an exception to the party exception and it applies when a "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d).

Plaintiff alleges that Defendants' intentional disclosure of Plaintiff's PHI to third parties violated HIPAA, among other statutes. ECF No. 41, ¶¶ 131-143, 196. Those allegations—that Defendants intentionally disclosed Plaintiff's information by installing the Meta and TikTok Pixels—"[fall] squarely within the crime-tort exception." *See* *R.S. v. Prime Healthcare Servs., Inc.*, 2025 WL 103488, at *6 (C.D. Cal. Jan. 13, 2025) (defendant's use of tracking pixel to disclose plaintiff's health information in violation of HIPAA fell within the crime-tort exception); *see also* *Doe v. Tenet Healthcare Corp.*, 789 F. Supp.3d 814, 849 (E.D. Cal. June 9, 2025) (similar).

Defendants' citation to *Pena v. GameStop, Inc.*, 670 F. Supp.3d 1112 (S.D. Cal. 2023) is inapposite. *Pena* involved a plaintiff's interaction with the defendant website's chatbot. The plaintiff attempted to argue that the party exception did not apply because the intended recipients of the communications were the defendant's customer service representatives instead of the defendant itself. *Pena*, 670 F. Supp. 3d at 1118. The court rejected this attempt to "fracture Defendant into different sub-entities." *Id*. In clear contrast, Plaintiff alleges that his communications were intercepted by at least two non-Defendant third parties, TikTok and Meta. ECF No. 41, ¶¶ 71-102, 118-130. Additionally, unlike the plaintiff in *Pena*, who attempted to invoke the crime-tort exception based on an interception alone, Plaintiff adequately alleges that Defendants not only intercepted his information, but also intentionally disclosed it to Meta and TikTok in violation of HIPAA. *See* *Pena*, 670 F. Supp. 3d at 1118.

Second, as to CIPA, Defendants do not address the fact that § 631(a) of CIPA provides that a person "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned

above in this section" is *also* liable under the statute. Cal. Penal Code §§ 631(a). Plaintiff alleges that Defendant employed Meta, TikTok, and other third parties to intercept his communications, which caused those third parties to violate § 631(a)'s second clause. ECF No. 41, ¶¶ 182, 232, 259; *see infra* at 16-17. These allegations alone are sufficient. *See, e.g.*, *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1083 (C.D. Cal. 2021); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 521 (C.D. Cal. 2021); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019).

### 3. Plaintiff Alleges His Information was Intercepted "In Transit" Under CIPA.

Defendants also attempt to argue that the communications they intercepted fall outside CIPA's scope because they were not intercepted "in transit." ECF No. 50-1, at 15. However, Plaintiff alleges that his communications were intercepted "in transit" because the interceptions and transmissions to third parties occurred simultaneously with the communication itself. *See* ECF No. 41, ¶¶ 82, 86-87, 122-123; *see also supra* at 12-13; *see also* *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1199 (S.D. Cal. 2024). That is sufficient at this stage. Crediting Defendants' argument would also require the Court to "disavow the facts" alleged and engage in fact-finding about the timing of transmissions—both inappropriate at this stage. *Heiting v. Taro Pharmaceuticals USA, Inc.*, 2024 WL 3738055, at *4, n. 6 (C.D. Cal. July 31, 2024); *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023) (holding that "in transit" requirement is unripe for resolution at pleading stage).

Finally, Defendants argue that the third parties did not "read[] or attempt to read[]" the contents of Plaintiff's communications in transit. ECF No. 50-1, at 16. Plaintiff's

allegations that the tracking pixels synthesize and analyze the intercepted information in real time are sufficient to state a claim under § 631(a)'s second prong. *See, e.g.,* *R.C. v. Sussex Publishers, LLC*, 2025 WL 1735994, at *4 (N.D. Cal. June 23, 2025) (finding that Google Analytics "reads or attempts to read" communications for advertising analytics for purposes of § 631(a)'s second clause).[4] Plaintiff states a CIPA claim.

**B. Plaintiff States a Claim under the MCPA.**

Defendants' three arguments regarding Plaintiff's MCPA claim should be rejected. First, Plaintiff's allegations satisfy Rule 9(b)'s heightened pleading standard, which requires claims sounding in fraud to state the "the who, what, when, where, and how of the misconduct charged[.]" *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). When pleading claims of fraud by omission, as is the case here, "Rule 9(b) is less strictly applied . . . because an omission cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation." *Hyde v. Maryland State Bd. of Dental Examiners*, 2018 WL 5786114, at *6 (D. Md. Nov. 5, 2018) (internal quotations omitted). Defendants do not specify how Plaintiff's allegations fail to meet this standard. *See* ECF No. 50-1.

Nevertheless, Plaintiff has stated his MCPA claims with particularity. Plaintiff alleges (1) which specific third parties intercepted his communications (TikTok and Meta),

---

[4] Defendants' citation to *Torres v. Prudential Financial, Inc.* is also misplaced because *Torres* was decided on summary judgment. Plaintiff's allegations are also far more similar to those in *In re Facebook*, which the Ninth Circuit cited in *Torres* to exemplify tracking pixel allegations that *do* satisfy the "in transit" requirement. 2025 WL 1135088, at *6 (N.D. Cal. 2025).

(2) the specific contents disclosed (personal identifiers, Event Data, clinic locations), (3) the date the violation occurred (November 3, 2024), (4) the specific webpages on which the violation occurred (the scheduler page), and (5) the functionality of the tracking pixels. ECF No. 41, ¶¶ 14, 271-286. These allegations suffice. *See, e.g.*, *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 489 (D. Md. 2020).

Second, as explained *supra*, Defendants' consent defense fails. *See supra* at 8-12.

Third, Plaintiff has adequately pled an identifiable loss and reliance. *Twardzik v. HP Inc.*, cited by Defendants, shows only that an MCPA claim requires an "identifiable loss, measured by the amount the consumer . . . lost as a result of his or her reliance on the seller's statement or omission." No. 22-2650, 2023 WL 5770999 (3d. Cir. 2023) (internal quotation marks and citation omitted). Entire sections of the Complaint are dedicated the monetary value of sensitive personal information, ECF No. 41, ¶¶ 36-52, and Plaintiff alleges that he was deprived of that value by his reliance on Defendants' statements and omissions. *See, e.g.*, *id*. at ¶ 280, 282. That is more than enough under MCPA. *See, e.g.*, *Shady Grove*, 2025 WL 2781542, at *7 (rejecting a defendant's similar argument under highly analogous circumstances).

**C. Plaintiff States a Claim Under the CMIA.**

None of Defendants' three arguments regarding Plaintiff's CMIA claim have merit.

First, Plaintiff alleges that his "medical information" was disclosed. CMIA defines "Medical Information" as "individually identifiable information . . . regarding a patient's medical history, mental health application information, reproductive or sexual health application information, mental or physical condition, or treatment." Cal. Civ. Code § 56.05(j)(1). Plaintiff alleges that Defendants disclosed the fact that he sought treatment for

a medical condition and the location of the surgical clinic where he booked an appointment, along with his name and other personal identifiers. *See* ECF No. 41, at ¶¶ 9, 93, 119, 214, 262. That is plainly "medical information" under CMIA.

Courts considering CMIA's definition of "medical information" have routinely found allegations like (or less detailed than) Plaintiff's sufficient. *See, e.g., Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 974 (S.D. Cal. 2023) ("*Cousin II*") (web searches for a primary care physician by specialty constitute "medical information" under CMIA); *Barbour v. John Muir Health*, 2023 WL 2618967 at * 7 (Cal. Super. Ct., 2023) (searches for doctors, specialties, and appointments constituted "medical information" under CMIA). As in *Barbour*, "it takes little deduction to ascertain" that Plaintiff scheduled his appointment to seek treatment for a specific medical condition. 2023 WL 2618967 at *7.

Defendants' cited cases are readily distinguishable. In *Wilson v. Rater8, LLC*, the court held that patient status *alone* did not constitute medical information. *Id.* Here, Plaintiff alleges disclosure of his patient status along with the medical condition he was seeking to treat (hair loss), the location of the clinic where he made an appointment, and his personal identifiers. ECF No. 41, ¶ 9, 93, 119, 214, 262. That is much more like *St. Aubin v. Carbon Health Technologies, Inc.*, where the court held that the fact that the plaintiff made an appointment, the reason the plaintiff made the appointment, and the location of the appointment were "medical information" under CMIA. 2024 WL 4369675, at *10 (N.D. Cal. 2024) (specifically distinguishing *Wilson*).

Similarly, *Cousin v. Sharp Healthcare* ("*Cousin I*") involved only vague allegations that the plaintiffs' search history was disclosed. 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023). In fact, after their claim was dismissed, the plaintiffs amended to allege disclosure

of search terms related to their specific medical conditions and that one of them *booked an appointment* through the site. Cousin II, 702 F. Supp. 3d 967, 973. The court found that those interactions "plausibly convey information about a present medical condition and the provision of medical care covered by HIPAA" and denied the motion to dismiss on that basis—a subsequent history that Defendants fail to disclose in their brief, and which demonstrates the adequacy of Plaintiff's allegations. *Id.*

In *Eisenhower Med. Ctr. v. Superior Court*, another case cited by Defendants, the court held that "a health care provider cannot be held liable under the relevant portions of the CMIA for the release of an individual's personal identifying information that is not coupled with that individual's medical history, mental or physical condition, or treatment." 226 Cal. App. 4th 430, 432 (2014). That is different from disclosures here, where the disclosure of personal identifiers was paired with Event Data showing that specific individuals made appointments at specific clinics which only treat a single medical condition—hair loss. *See, e.g.,* *St. Aubin*, 2024 WL 4369675 at *10.

Second, Defendants argue that the tracking pixels fall under CMIA's "administrative services" exception. Under that exception, a covered entity may disclose information to "a person or entity that provides billing, claims management, medical data processing, or other administrative services for providers of health care." Cal. Civ. Code § 56.10(c)(3). In support, Defendants cite completely inapposite cases holding that photocopiers and fax machines are "administrative services." *See* *Starbuck v. Kaiser Found. Health Plan, Inc.*, 275 Cal. Rptr 444, 449 (1990); *Emmerick v. Ridgecrest Reg'l Hosp.*, 2018 WL 784302, at *4 (E.D. Cal. 2018). Defendants fail to explain how Plaintiff's tracking pixel allegations are analogous to those services, or how the disclosures relate to

billing or payment. This argument should be disregarded entirely. *See, e.g.*, *Strong v. LifeStance Health Grp. Inc.*, No. CV-23-00682-, 2025 WL 317552, at *11 (D. Ariz. Jan. 28, 2025) ("Meta cannot plausibly be compared to a provider of 'administrative services' like a billing company.").

Finally, Defendants' argument that Meta and TikTok did not read the communications, or read them "in transit," has been roundly rejected by courts considering analogous allegations. *See, e.g.*, *Tenet Healthcare Corp.*, 789 F. Supp. 3d at 838-839 (collecting authorities rejecting the "in transit" argument); *see also* *Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 819 (N.D. Cal. 2023). It should be similarly rejected here. *See, e.g.*, ECF No. 41, ¶¶ 82, 85, 86, 87, 122, 123.

**D. Plaintiff States a Claim for Negligence.**

"To state a claim for negligence in California, a plaintiff must establish the following elements: (1) the defendant had a duty, or an obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks, (2) the defendant breached that duty, (3) that breach proximately caused the plaintiff's injuries, and (4) damages." *Dent v. Nat'l Football League*, 902 F.3d 1109, 1117 (9th Cir. 2018).

First, Plaintiff alleges duties under both common law and statute (under HIPAA and the Federal Trade Commission Act). ECF No. 41, ¶¶ 244-247. Additionally, California law imposes a statutory presumption of duty. Cal. Civ. Code § 1714(a). These duties hold in cases involving tracking pixels. *See* *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019); *Inmediata Health Grp. Corp.*, 501 F. Supp. 3d at 914.

Second, Plaintiff alleges that Defendants breached those duties "by failing to use reasonable measures to protect Plaintiff's and the putative class members' Private

Information." ECF No. 41, ¶ 248. Whether Defendants breached that duty is a factual inquiry unripe for resolution at this stage. *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 101; *Inmediata Health Grp. Corp.*, 501 F. Supp. 3d at 915.

Third, Defendants' breach caused injury. Plaintiff alleges that "[i]t was foreseeable that Defendants' failure to use reasonable measures to protect Plaintiff's and the putative class members' Private Information would result in injury to Plaintiff and the putative class members." ECF No. 41, ¶ 249. As with breach, establishing proximate cause is unripe for resolution at this stage. *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1019; *Inmediata Health Grp. Corp.*, 501 F. Supp. 3d at 916.

Fourth, Plaintiff adequately alleges that he was harmed, and continues to be harmed, by having his Private Information disclosed because of Defendants' negligence. ECF No. 41, ¶ 251; *see In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1020; *Inmediata Health Grp. Corp.*, 501 F. Supp. 3d at 918.

**E. Plaintiff States a Claim for Invasion of Privacy.**

To establish a claim of invasion of privacy for intrusion upon seclusion, Plaintiff "must show that [he] had an objectively reasonable expectation of privacy in [his] medical communications and [Defendant's] conduct was highly offensive." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022).

First, Plaintiff has shown that he had an objectively reasonable expectation of privacy. It is uncontroversial that a person enjoys a reasonable expectation of privacy surrounding their medical information. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799. That "patient-status and medical-related communications between

patients and their medical providers are protected by federal law" (e.g., HIPAA) bolsters Plaintiff's objectively reasonable expectation of privacy. *Id.*

Second, Plaintiff alleges a "highly offensive" intrusion. Defendants argue that "there is no reasonable expectation of privacy in standard internet transmissions." ECF No. 50-1, at 22. But transmissions involving a person's medical information are *not* standard internet transmissions. Courts regularly hold that the disclosure of personal medical information is highly offensive. *See, e.g., Regents of Univ. of California,* 672 F. Supp. 3d at 820; *Tenet Healthcare Corp.*, 789 F. Supp. 3d at 844 (collecting authorities).

Finally, Defendants' argument that disclosures cannot be highly offensive if done for a "legitimate business reason" fails because "[t]he existence of a lawful purpose does not sanitize an interception that was also made for an illegitimate purpose." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 797.

### F. Plaintiff States a Claim for Unjust Enrichment.

Defendants argue that Plaintiff cannot pursue a claim for unjust enrichment because he "fails to plausibly allege that any sensitive data was actually disclosed or that he has in fact suffered any injury." ECF No. 50-1, at 25. But Plaintiff does just that. He alleges that his protected health information was intercepted and disclosed to third parties in real time, and that he suffered personal and statutory injuries as a result. He plausibly alleges that his disclosed information has value, ECF No. 41, ¶¶ 30-52, that Defendants monetized his medical information for profit without his consent or compensation, *id.*, ¶¶ 292-294, and that he lacks an adequate remedy at law. *Id.*, ¶ 294. That is all that is required to state a claim for unjust enrichment. *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1051 (N.D. Cal. 2025) ("Plaintiffs may bring an unjust enrichment claim because Plaintiffs

allege that Defendant benefited from using Plaintiffs' information and that Plaintiffs' remedies at law are inadequate"); *Shady Grove*, 2025 WL 2781542, at *7; *Tenet Healthcare Corp.*, 789 F. Supp. 3d at 846 (similar); *A.J. v. LMND Med. Grp.*, 2024 WL 4579143, at *4 (N.D. Cal. Oct. 25, 2024) (similar).

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' motion to dismiss (ECF No. 50). In the alternative, Plaintiff requests leave to amend to address any deficiencies identified by the Court.

**CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1**

The undersigned, counsel of record for Plaintiff Alexander Sisti, certifies that this brief contains 6,996 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 16, 2026

/s/ *Frank S. Hedin*
Frank S. Hedin

**CERTIFICATE OF SERVICE**

I, Frank S. Hedin, hereby certify that I served a true and correct copy of the foregoing on all parties of record via CM/ECF on March 16, 2026.

/s/ *Frank S. Hedin*
Frank S. Hedin