SHOOK, HARDY & BACON L.L.P.
Rachel A. Straus (SBN 268836)
rstraus@shb.com
Saman M. Rejali (SBN 274517)
srejali@shb.com
Laurel A. Scott (SBN 350181)
lascott@shb.com
Rima A. Haggar (SBN 344167)
rhaggar@shb.com
2121 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: 424.285.8330
Facsimile: 424.204.9093

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

ALEXANDER SISTI, individually and on behalf of all others similarly situated,

Plaintiff,

v.

BOSLEY INC. and BOSLEY MEDICAL GROUP, a medical corporation;

Defendants.

Case No. 2:25-cv-10669-JFW-DFM

Assigned to: Hon. John F. Walter

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Date: April 13, 2026
Time: 1:30 p.m.
Place: Courtroom 7A - 7th Floor

## TABLE OF CONTENTS


INTRODUCTION........................................................................................1

ARGUMENT ...........................................................................................1

I. Plaintiff Has Alleged No Concrete Injury And Lacks Standing. ........1

II. Plaintiff Consented To The Alleged Data Transmissions...................5

III. Plaintiff Does Not Allege The Elements Of Any Of His Claims........7

A. Plaintiff's Wiretapping Claims Fail (Counts I, III & V). ..........7

B. Plaintiff Pleads No Deceptive Omission Or Identifiable Loss Under The Maryland CPA. ......................................................9

C. Plaintiff's CMIA Claim Fails. (Count II)................................10

D. Plaintiff Fails To Plausibly Allege Negligence. (Count IV)...11

E. Plaintiff Cannot State A Claim For Invasion Of Privacy. (Count VIII) ..........................................................................11

F. Plaintiff Cannot State A Claim For Unjust Enrichment. (Count VII) ..........................................................................12

CONCLUSION .........................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Community.com*,
2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) .......... 8

*A.S. v. SelectQuote Ins. Servs.*,
2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) .......... 4, 5, 8

*Boulton v. Community.com, Inc.*,
2025 WL 314813 (9th Cir. Jan. 28, 2025) .......... 9

*Bradshaw v. Lowe's Companies, Inc.*,
2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) .......... 3, 4

*Briskin v. Shopify Inc.*,
2026 WL 161441 (N.D. Cal. Jan. 21, 2026) .......... 9

*Dawidzik v. Tesla, Inc.*,
2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) .......... 3

*Doe 1 v. Chestnut Health Sys., Inc.*,
2025 WL 1616635 (C.D. Ill. June 6, 2025) .......... 8

*Driskill v. Experian Info. Sols., Inc.*,
753 F. Supp. 3d 839 (N.D. Cal. 2024) .......... 6, 7

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) .......... 4

*Gehringer v. Ancestry.com Operations Inc.*,
2026 WL 734526 (N.D. Cal. Mar. 16, 2026) .......... 4

*Greenstein v. Noblr Reciprocal Exch.*,
585 F. Supp. 3d 1220 (N.D. Cal. 2022) .......... 10

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) .......... 9

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 12

*Hong v. StubHub, Inc.*,
2024 WL 4720924 (C.D. Cal. 2024), ..... 6

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ..... 2, 10

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ..... 10

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) ..... 11

*Oddei v. Optum, Inc.*,
2021 WL 6333467 (C.D. Cal. Dec. 3, 2021) ..... 11

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ..... 6

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) ..... 8

*Pemberton v. Rest. Brands Int'l, Inc.*,
2025 WL 3268404 (N.D. Cal. Nov. 24, 2025) ..... 4

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. Aug. 26, 2025) ..... 2, 3

*Price v. Converse, Inc.*,
805 F. Supp. 3d 1102 (C.D. Cal. 2025) ..... 4

*Rosenow v. Facebook, Inc.*,
2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) ..... 8, 9

*Schmerling v. Injured Workers' Ins. Fund*,
795 A.2d 715 (Md. 2002) ..... 7

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2021) ..... 6

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ..... 2

*Stark v. Patreon, Inc.*,
635 F. Supp. 3d 841 (N.D. Cal. 2022) ..... 5

*Steinberg v. CVS Caremark Corp.*,
899 F. Supp. 2d 331 (E.D. Pa. 2012) ........ 11

*Tappana v. Am. Honda Motor Co., Inc.*,
609 F. Supp. 3d 1078 (C.D. Cal. 2022) ........ 9

*Wadeea v. Mercedes-Benz USA, LLC*,
758 F. Supp. 3d 1217 (S.D. Cal. 2024) ........ 9

*TransUnion LLC v. Ramirez*,
595 U.S. 413 (2021) ........ 1

*Wooten v. BioLife Plasma Servs. L.P.*,
807 F. Supp. 3d 1139 (E.D. Cal. 2025) ........ 4

**Statutes**

Cal. Civ. Code § 56.05 ........ 10

Cal. Civ. Code § 56.10 ........ 11

Cal Penal Code § 631(a) ........ 8

Md. Code, Cts. § Jud. Proc. § 10-401. ........ 8

## INTRODUCTION

Plaintiff does not have Article III standing to pursue his claim. He does not claim to be a Bosley patient. He does not claim that he ever attended an appointment at a Bosley clinic. He does not claim that he paid Bosley for any medical services, for which he now seeks reimbursement or disgorgement. He does not identify *any* personal health information, or "sensitive" information of any kind, that he believes Bosley disclosed to Facebook or TikTok. He does not claim that Facebook, TikTok, or any other third party contacted him, or targeted him with advertisements about hair loss treatments as a result of Bosley's alleged disclosures. He does not allege that he has ever attempted to sell his health information, or explain what health information he believes is less valuable as a result of Bosley's alleged disclosures. In short, Plaintiff does not identify *any concrete injury* that he claims to have suffered as a result of Bosley's alleged conduct. Instead, as revealed by the First Amended Complaint (FAC), Plaintiff seeks to bring suit in federal court because he believes *a statute was violated*, not because he was actually harmed. "An uninjured plaintiff who sues in those circumstances is, by definition, not seeking to remedy any harm to [himself] but instead is merely seeking to ensure a defendant's compliance with regulatory law (and, of course, to obtain some money via the statutory damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427-28 (2021) (internal citation omitted). For this reason, and the other reasons stated below and raised in Bosley's moving brief, the Court should dismiss the FAC without leave to amend.

## ARGUMENT

### I. Plaintiff Has Alleged No Concrete Injury And Lacks Standing.

Plaintiff has failed to allege any concrete injury, and therefore cannot establish Article III standing. According to Plaintiff, he was harmed by Bosley in the following ways:

- "Because Defendants disclosed Plaintiff's Private Information during the applicable statutory period, Defendants violated Plaintiff's rights and invaded his statutorily conferred interest in keeping such information (which bears on his personal affairs and concerns) private." FAC ¶ 23.

- Similarly: "[T]he named Plaintiff and the putative class members suffered invasions of their statutorily protected right to privacy, as well as intrusions upon their private affairs and concerns that would be highly offensive to a reasonable person". FAC ¶ 171.
- Again, similarly: "Plaintiff and the putative class members suffered an injury, including violation to their rights of privacy, loss of the privacy of their Private Information, loss of control over their sensitive personal information, and suffered aggravation, inconvenience, and emotional distress." FAC ¶ 220.

None of these (nor any other allegation in the FAC) allege a concrete injury. Plaintiff fails to allege *any specific information* about himself that he claims Bosley disclosed, or *any concrete harm* that the disclosure of that information caused *to him*. *See I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1050 (N.D. Cal. 2022) (in similar context of data breaches, "courts must examine the nature of the specific information at issue to determine whether privacy interests were implicated at all."). Instead, Plaintiff summarily lumps himself in with "the putative class members" and rests his case on alleged violations of "statutorily protected right to privacy"—in other words, he alleges harm based merely on a vague violation of a vague privacy statute. But "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). The Ninth Circuit upholds this requirement in the context of alleged invasions of privacy: Article III standing "requires a plaintiff to demonstrate more than just a statutory violation when evaluating whether a plaintiff has alleged a concrete injury." *Popa v. Microsoft Corp.*, 153 F.4th 784, 793 (9th Cir. 2025) (finding Plaintiff lacked standing in case involving website tracking technology).

Plaintiff's boilerplate allegations of mere statutory violations fail to clear this hurdle. And his glancing references to "loss of control over [] sensitive personal information," "intrusions upon [] private affairs," and "aggravation, inconvenience, and emotional distress" do not save his case either. FAC ¶¶ 171, 220. As noted in Bosley's

moving brief, the FAC merely alleges Bosley disclosed ***the fact*** that Plaintiff submitted a scheduling form on Bosley's website to third parties such as Meta and TikTok. Memorandum of Points and Authorities ("Mem.") at 2. Plaintiff fails to rebut this point in his Opposition, and thereby concedes it. Thus, it is entirely unclear what "sensitive information" Plaintiff claims was disclosed, how it intruded upon any of his "private affairs," or how he could have been aggravated, distressed, or inconvenienced by the disclosure of any information. *See Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413, at *4 (N.D. Cal. Aug. 6, 2025) ("Taken together, Plaintiff alleges only that Defendant invaded his privacy by impermissibly collecting Plaintiff's 'data' and 'information;' but "Plaintiff cannot establish constitutional standing based on conclusory statements.") (internal citations omitted).

Further, Plaintiff's attempt to distinguish *Popa v. Microsoft Corp.* entirely misses the point. Opposition ("Opp.") at 7; 153 F.4th 784 (9th Cir. 2025). Plaintiff argues that Bosley disclosed more sensitive information than the information at issue in *Popa*. Opp. at 7. But "[w]hether the *conduct* at issue has a historical analog does not answer the question of whether the plaintiff has suffered a concrete injury. Rather, the answer to that question depends on 'whether an individual plaintiff has suffered a *harm* that has traditionally been actionable in our nation's legal system.'" *Bradshaw v. Lowe's Companies, Inc.*, 2025 WL 3171740, at *6 (S.D. Cal. Nov. 12, 2025) (citing *Popa*, 153 F.4th at 791) (emphasis in original); see also *Popa*, 153 F.4th at 792 (in addition to alleging a "concrete" harm, the Court must be satisfied that "the *specific* plaintiffs had experienced harm of that nature") (emphasis in original). Plaintiff entirely fails to allege how Bosley's alleged disclosures caused him to experience any kind of harm beyond bare procedural "violations" of "statutory interests".

Plaintiff's case is no different from a recent cases in California federal courts—all involving privacy claims against Defendants for using third-party advertising technology on their websites—where the Plaintiffs failed to allege a concrete injury and thus lacked standing. *See, e.g.*, *Dawidzik v. Tesla, Inc.*, 2025 WL 3786963, at *3 (C.D. Cal. Dec. 29,

2025) (no standing where Plaintiff merely alleged a "statutory privacy violation" under CIPA); *Price v. Converse, Inc.*, 805 F. Supp. 3d 1102, 1104-05 (C.D. Cal. 2025) (no standing where Plaintiff merely claims that "Defendant, through the use of the TikTok Software, collected Plaintiff's information, thereby constituting an invasion of privacy."); *Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139, 1145 (E.D. Cal. 2025) (no standing where Plaintiff fails to allege "that the third-party trackers collected any other embarrassing, invasive, or otherwise private information." (internal citation omitted)); *Bradshaw v. Lowe's Companies, Inc.*, 2025 WL 3171740, at *6 (S.D. Cal. Nov. 12, 2025) (no standing where Plaintiffs merely claim that "trackers have collected their 'IP addresses,' undefined 'unique identifiers,' and 'browsing information' while they are on Defendants' website"). Like the Plaintiffs in these cases, Plaintiff fails to allege that Bosley disclosed any specific, sensitive information about him to third parties.

To be sure, some courts have found plaintiffs have standing where the Plaintiff identified *specific and sensitive* information that Defendant allegedly disclosed, and explained *how* those disclosures caused actual harm to Plaintiff. *See Pemberton v. Rest. Brands Int'l, Inc.*, 2025 WL 3268404, at *4 (N.D. Cal. Nov. 24, 2025) (concluding the plaintiff had a "protectable privacy interest" in "[p]rivate [c]ommunications" that included "browsing history," "user input data," and demographic information"); *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *7 (N.D. Cal. Aug. 29, 2025) (finding standing where Plaintiff alleges Defendant disclosed "[t]he information the user entered into the Websites' form fields, including search queries, the user's name, age, gender, email address, location, and/or payment information, demographic information"); *Gehringer v. Ancestry.com Operations Inc.*, 2026 WL 734526, at *3 (N.D. Cal. Mar. 16, 2026) (finding standing where Plaintiffs alleged Defendant's disclosures "caused Plaintiffs mental anguish and disturbed their peace of mind. Plaintiffs are deeply uncomfortable that Ancestry is profiting from its use of their names, photographs, and personas in advertisements for a website they do not use, endorse, or approve of."); *A.S. v. SelectQuote Ins. Servs.*, 2024 WL 3881850, at *2, *8 (S.D. Cal. Aug. 19, 2024)

(finding standing where Plaintiff alleged Defendant disclosed "his name, date of birth, gender, and email address," and specific "health information, including that he was diagnosed with depression and anxiety."). Unlike these cases, Plaintiff fails to allege any sensitive health or demographic information, or "user input data" was disclosed to third parties—especially because he does not allege that Bosley disclosed the *contents* of whatever information he purportedly inputted into Bosley's scheduling form.

## II. Plaintiff Consented To The Alleged Data Transmissions.

Plaintiff attempts to distract from his consent to Bosley's data disclosures—which forecloses *all* of his claims in this case—by arguing that the Court should not take judicial notice of Bosley's privacy policy. Opp. at 8-9. But "[c]ourts are . . . permitted to take judicial notice of privacy policies that appear on publicly available websites because their authenticity cannot reasonably be questioned." *A.S. v. SelectQuote*, 2024 WL 3881850, at *4; (compiling cases where California courts took judicial notice of privacy policies on publicly available websites). Here, Defendant's privacy policy is publicly available on its website, permitting judicial notice.

Separately, the Court may also incorporate Bosley's website and privacy policy by reference, because "Plaintiff[] reference[s] Defendant's website throughout [his] Complaint." *A.S. v. SelectQuote*, 2024 WL 3881850, at *3-4. As explained in Bosley's Motion, Plaintiff's screenshots of the scheduling page omitted the conspicuous notice Bosley provides about its privacy policy and terms of service on the scheduling page. Mem. at 3-4. "The [incorporation-by-reference] doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 850 (N.D. Cal. 2022) (internal citation omitted). So too here.

Plaintiff also claims Bosley's consent argument relies upon contested facts. Opp. at 10-11. This is false. Rather, Bosley's position is based on the *complete picture* of what Bosley's scheduling page looks and looked like to website visitors such as Plaintiff—rather than the cropped, incomplete screenshot Plaintiff included in his FAC, which

deliberately obscured the conspicuous notice provided on the scheduling page: "By providing a phone number and submitting this form . . . I also agree to Bosley's Terms of Service and acknowledge the Privacy Policy." Mem. at 3-4. Next, Plaintiff claims that he did not "manifest assent" to Bosley's Terms of Service or Privacy Policy, and characterizes the notice provided as an unenforceable "browsewrap" agreement. Opp. at 11. This is also false: Bosley provided website visitors with a *sign-in wrap* agreement, not a browsewrap agreement. With a sign-in wrap agreement, a website visitor "manifests assent" by taking an action, such as clicking the "purchase" button, or—as here—by submitting Bosley's scheduling form. *See Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 465-66 (2021) (explaining sign-in wrap agreements).

Sign-in wrap agreements like Bosley's are enforceable where they are reasonably conspicuous and require the website visitor to "take[] some action" to manifest their assent. *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023). Both elements are satisfied here. Bosley's sign-in wrap agreement is virtually indistinguishable from the sign-in wrap agreements in *Hong v. StubHub, Inc.*, 2024 WL 4720924, at *3 (C.D. Cal. 2024),[1] and *Driskill v. Experian Info. Sols., Inc.*, 753 F. Supp. 3d 839, 842 (N.D. Cal. 2024), both of which were found to be enforceable. In particular, the links to the Terms of Service and Privacy Policy are emphasized in blue font, and the notice's location immediately under the "Next Step" button makes it "difficult to miss." *Hong*, 2024 WL 4720924, at *5; *see also Driskill*, 753 F. Supp. 3d at 844; *cf.* Exhibit A to Req. for Judicial Notice (Dkt. No. 48-3), at 1 (Bosley's sign-in wrap agreement). Further, the notice explicitly notified Plaintiff and other website visitors they manifested their assent to the Terms of Service and the Privacy Policy by submitting the scheduling form—which is exactly what Plaintiff alleges he did. *Hong*, 2024 WL 4720924, at *8;

[1] The court's opinion in *Hong* included screenshots of the Defendant's website notice, but they are not visible on the Westlaw version of the decision. Therefore, for the Court's convenience, Bosley is including the original, as-filed version of the *Hong* decision, as **Appendix A**.

*Driskill*, 753 F. Supp. 3d at 844; Ex. A to RJN, at 1.

**III. Plaintiff Does Not Allege The Elements Of Any Of His Claims.**

**A. Plaintiff's Wiretapping Claims Fail (Counts I, III & V).**

*1. The Telephone Exemption Applies To Plaintiff's Maryland Claim.*

Plaintiff's claim under the Maryland Wiretap Act (MWA) fails because the supposed "intercepting devices," as alleged, fall within the statute's "telephone exemption." Plaintiff attempts to argue that the pixels at issue fall outside of this exception because they "do not permit any additional person to *participate* in the two-way functionality of the communications system." Opp. at 14. But the *Schmerling* case was not so limited. 795 A.2d 715 (Md. 2002). There, the Court held that, to fall under the "telephone exemption," "the equipment must further the use of or functionally enhance the telecommunications system." *Id.* at 726. That is exactly what Plaintiff alleges. Specifically, Plaintiff alleges Bosley uses the Meta and TikTok Pixels to enhance their data analytics and advertising capabilities within the operation of Bosley's website. *See, e.g.*, FAC ¶¶ 55, 63, 65-67 70, 106, 117.

*2. Plaintiff's ECPA and CIPA Claims Are Barred By The Party Exception Rule.*

Because the party-exception rule precludes liability for a party to the communications, Plaintiff's ECPA and CIPA claims must be dismissed. Plaintiff's opposition does not provide a legitimate basis to defeat these arguments. Instead, Plaintiff argues the crime-tort exception applies here, by claiming that Defendants' intention was to violate HIPAA by disclosing Plaintiff's private health information to third parties. But as explained at length, *see* Mem. at 2, Plaintiff fails to allege Bosley transmitted any of Plaintiff's individually identifiable health information to Meta, TikTok or any other third party. Plaintiff's Opposition does nothing more than offer generalized and conclusory statements of how Defendants allegedly disclosed "he sought treatment for a medical condition and the location of the surgical clinic where he booked an appointment, along with his name and *other* personal identifiers." Opp. at 19-20

(emphasis added). Plaintiff however, merely submitted the scheduling form; none of his personal medical information was provided. Mem. at 2; FAC ¶¶ 85-89, 96, 122, 125. In other words, the information Plaintiff inputted into the scheduling form was not disclosed to any third parties. Thus, Plaintiff fails to plausibly allege HIPAA could have been violated.

What's more, courts have repeatedly rejected this exact argument in the wiretapping context, because Plaintiff fails to allege any act "independent of the interception itself" that "was done for a criminal or tortious purpose." *Doe 1 v. Chestnut Health Sys., Inc.*, 2025 WL 1616635, at *12 (C.D. Ill. June 6, 2025). By claiming that Bosley had a "tortious purpose" in disclosing Plaintiff's website interactions to third parties, Plaintiff is merely claiming that the *interception itself* was committed for a tortious purpose. *See Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1119 (S.D. Cal. 2023) (crime-tort exception under ECPA is not triggered "when, as here, the tortious conduct is the alleged wiretapping itself.").

*3. Plaintiff's CIPA and MWA Claims Fail to Allege An Interception In Transit.*

Plaintiff fails to state a claim under CIPA or the Maryland Wiretap Act because he does not plausibly allege a contemporaneous "interception" of any communication under the statute. Md. Code, Cts. § Jud. Proc. § 10-401; Cal Penal Code s. 631(a). Plaintiff's facile argument, that it is "more than enough" to make a conclusory claim that the Pixels "contemporaneously" intercept Plaintiff's communications, is misguided. Opp. at 15. Courts routinely dismiss wiretapping claims where—as here—"there is no plausible allegation that Defendant acted to learn the contents of the messages while they were, in a technical sense, in transit or in the process of being received." *Adler v. Community.com, Inc.*, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021); *see also A.S. v. SelectQuote*, 2024 WL 3881850, at *10 (dismissing CIPA and Maryland Wiretapping Act claims because "without further support or explanation, Plaintiffs' conclusory allegations regarding "interception" are insufficient at this stage."); *Rosenow v.*

*Facebook, Inc.*, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020). Plaintiff's "repeated assertions" of interceptions are "simply conclusory," and this Court "[is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Boulton v. Community.com, Inc.*, 2025 WL 314813, at *1 (9th Cir. Jan. 28, 2025).

Further, under CIPA, Plaintiff fails to meet the even higher bar of alleging his information was intercepted ***and read*** while it was still in transit. As explained in Bosley's Motion, Mem. at 16, Plaintiff fails to allege any third party "read" the contents of his communications *at all*, let alone while they were still in transit. As such, there can be no Section 631 violation. *Briskin v. Shopify Inc.*, 2026 WL 161441, at *5-7 (N.D. Cal. Jan. 21, 2026); *see also Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1125 (C.D. Cal. 2024) (Plaintiffs must allege that interceptor *read* their communications during their transmission, as opposed to once the communications were placed in electronic storage).

**B. Plaintiff Pleads No Deceptive Omission Or Identifiable Loss Under The Maryland CPA.**

Plaintiff argues that when pleading claims of fraud by omission, Rule 9(b) is less strictly applied. Opp. at 18. While Courts may apply Rule 9(b) with flexibility, they do not dispense with the heightened standard altogether. Plaintiff must still plead with particularity. *See Wadeea v. Mercedes-Benz USA, LLC*, 758 F. Supp. 3d 1217, 1224 (S.D. Cal. 2024) ("A claim based on a nondisclosure or omission is a claim for misrepresentation in a cause of action for fraud, and it must be pleaded with particularity under Rule 9(b)."). To plead a claim for fraud by omission, Plaintiff must describe the content of the omission and where the omitted information should or could have been revealed. *See Tappana v. Am. Honda Motor Co., Inc.*, 609 F. Supp. 3d 1078, 1088 (C.D. Cal. 2022). Here, the FAC fails to do so.

Further, Plaintiff fails to allege any ascertainable injury or loss. The arguments in Plaintiff's Opposition are once again conclusory. Plaintiff cannot simply claim that

"sensitive personal information" carries "monetary value," when he failed to sufficiently allege that he *actually suffered the loss of any sensitive personal information.* Moreover, courts routinely reject the theory that plaintiffs in privacy cases were harmed by the "loss of value" of their data, especially where the Plaintiff's allegations of harm are as threadbare as they are here. *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019) (in Pixel case, "plaintiffs' economic-loss theory is . . . purely hypothetical and does not give rise to standing."); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1054 (N.D. Cal. 2022) ("[T]he SAC is devoid of any allegations describing how the breach devalued plaintiffs' *specific information* . . . such that they are prevented from deriving economic benefit from this information in the future.") (emphasis added); *Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1229 (N.D. Cal. 2022) ("Plaintiffs do not show how the Unauthorized Data Disclosure caused their [personal information] to be less valuable than before the breach. Moreover, Plaintiffs do not allege they had plans to sell" that information.).

### C. Plaintiff's CMIA Claim Fails. (Count II)

Plaintiff's CMIA arguments are irrelevant. The dispositive question is whether the information at issue constitutes "Medical Information" or "Medical Records." The CMIA applies only to "individually identifiable information … regarding a patient's medical history, mental health application information, mental or physical condition, or treatment." Cal. Civ. Code § 56.05(i). Again, Plaintiff merely filled out the scheduling form, but Plaintiff never alleges the contents of his purported submission were disclosed to any third party. He never claims that he became a Bosley patient or attended an appointment at a Bosley clinic. Thus, Plaintiff fails to allege his "substantive information regarding [a] person's medical condition, history or treatment" was disclosed. The mere fact that Plaintiff sought a consultation does not constitute information about his medical history, mental health application information, mental or physical condition, or treatment. *See* Mem. at 19.

Second, Plaintiff argues that the CMIA "administrative services" exception does

not apply, but Plaintiff's analysis of this exception is misguided. The CMIA exempts disclosures made to entities that aid providers of health care in their administrative operations. Cal. Civ. Code § 56.10. While it expressly exempts disclosures made to billing, claims management, and medical data processing entities, this is not an exhaustive list; "other administrative services" are exempted as well. *Id.* Like professional photocopiers who help hospitals maintain files, entities that provide website data analytics and marketing services help medical entities maintain their websites and the data they receive therefrom. Thus, they fall within the category of "other administrative services" and are thus exempt. *See Oddei v. Optum, Inc.*, 2021 WL 6333467, at *3 (C.D. Cal. Dec. 3, 2021), *aff'd sub nom. Oddei v. ScanSTAT Techs., LLC*, 2022 WL 17538747 (9th Cir. Dec. 8, 2022).

**D. Plaintiff Fails To Plausibly Allege Negligence. (Count IV)**

Plaintiff's Opposition fails to address the shortcomings of his negligence claim: Plaintiff has failed to plausibly allege a breach of any legal duty owed to him by Bosley. Further, it is insufficient for Plaintiff to claim he suffered an injury without articulating an "appreciable, nonspeculative, present harm." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 962 (S.D. Cal. 2012). Plaintiff's allegations of injury are conclusory, vague, and boilerplate; none of them saves his negligence claim.

**E. Plaintiff Cannot State A Claim For Invasion Of Privacy. (Count VIII)**

As explained above, based on the *extremely limited* information that Plaintiff alleges Bosley disclosed to third parties, Plaintiff cannot allege he had any reasonable expectation of privacy, nor that Defendants subjected him to any highly offensive intrusion. Mem. at 22-24. Additionally, Plaintiff simply cannot base an *intrusion upon seclusion* claim upon the facts he alleges, where he *voluntarily* provided his information to Bosley, and alleges that Bosley disclosed that information to third parties. *Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331, 342-43 (E.D. Pa. 2012) (dismissing intrusion claim, stating, "liability for intrusion upon seclusion cannot exist where a

defendant legitimately obtains information from a plaintiff . . . This is so even where those facts voluntarily offered are later disclosed to a third party"). Plaintiff also fails to rebut Bosley's argument that it had a "legitimate business reason" for the alleged disclosures. Plaintiff does not come close to alleging Bosley was motivated by "socially repugnant or unprotected reasons" such as "harassment, blackmail, or prurient curiosity." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 297 (2009).

### F. Plaintiff Cannot State A Claim For Unjust Enrichment. (Count VII)

As discussed above and in Bosley's moving brief, Plaintiff fails to plausibly allege any sensitive data was disclosed or that he actually suffered any actual injury. Plaintiff merely relies on threadbare assertions he "suffered personal and statutory injuries," without articulating what his alleged injuries are. Plaintiff cannot pursue an unjust enrichment based on his assertion that medical information has value, and Bosley monetized that information for profit, because he cannot identify any medical information he believes Bosley actually disclosed.

## CONCLUSION

For the foregoing reasons, Plaintiff cannot state any valid claims against Defendants, and Bosley respectfully requests that the Court grant this Motion and dismiss all of Plaintiff's claims.

Dated: March 30, 2026

Respectfully submitted,

**SHOOK, HARDY & BACON L.L.P.**

By: *<u>/s/ Saman M. Rejali</u>*
SAMAN M. REJALI
RACHEL A. STRAUS

Attorneys for Defendants
BOSLEY INC.; and
BOSLEY MEDICAL GROUP

## CERTIFICATE OF SERVICE

I, Saman M. Rejali, hereby certify that I served a true and correct copy of the foregoing on all parties of record via CM/ECF on March 30, 2026.