Frank S. Hedin (SBN 291289)
fhedin@hedinllp.com
HEDIN LLP
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107

*Attorney for Plaintiff and Putative Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALEXANDER SISTI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BOSLEY INC.; and BOSLEY MEDICAL GROUP, a medical corporation;<br><br>Defendants. | Case No. 2:25-cv-10669-JFW-DFM<br><br>Assigned to: Hon. John F. Walter<br><br>**[PROPOSED] STATEMENT OF DECISION DENYING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date: April 13, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom 7A – 7th Floor |

On January 9, 2026, Plaintiff filed his First Amended Class Action Complaint (the "Complaint"), bringing claims for relief for (1) violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511 (1), *et seq*; (2) violation of California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56, *et seq*; (3) violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631, 632: (4) Negligence; (5) violation of the Maryland Wiretap Act, Md. Code Ann., Cts. & Jud. Proc. § 10-402; (6) violation of the Maryland Consumer Protection Act ("MCPA"), Md. Comm. Law Code Ann., § 13-101; (7) Unjust Enrichment; and (8) Invasion of Privacy. Defendants filed their Motion to Dismiss Plaintiffs' Class Action Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on February 19, 2026. On March 16, 2026, Plaintiff filed his Opposition. On March 30, 2026, Defendants filed their Reply. After considering the moving, opposition, and reply papers, the Court **DENIES** the Motion to Dismiss in its entirety for the reasons stated below.

## I. FACTUAL BACKGROUND

Plaintiff alleges the following facts, which are assumed to be true for purposes of this Motion. *See Erickson v. Pardus*, 551 U.S. 89, 93 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007).

Defendants run a nationwide chain of over seventy surgical hair transplantation clinics. ECF No. 41, ¶¶ 24-25. Defendants maintain a website, www.bosley.com (the "Website"), where patients may schedule appointments at any of these clinics. *Id.*, ¶ 25. Defendants configured the Website to transmit protected personal information to third-party advertising companies using tracking pixels from Meta Platforms, Inc. ("Meta") and

TikTok, Inc. ("TikTok"). *Id.*, ¶ 8. Plaintiff accessed the Website to schedule an appointment at one of these clinics for a hair transplant surgery.

To create an account with Meta or TikTok, users must provide their first and last name, email address, birthdate, and phone number or email. *Id.* A unique, persistent numerical identifier is then assigned to their account—a Facebook ID ("FID") in the case of Meta, and a TikTok User ID ("User ID") in the case of TikTok. *Id.*, ¶¶ 55, 111. When either Pixel is installed on a website, Meta or TikTok can match a user's activity on the website to their respective persistent identifiers. *Id.*, ¶¶ 56, 59-61, 109-113.

Both the Meta Pixel and TikTok Pixel transmit Event Data, or information linking users to specific actions they take on a website, to those technologies' respective developers. *Id.*, ¶ 62.[1] Whenever any Event is triggered, the website hosting the tracking pixel transmits to Meta or TikTok: (1) Event Data, (2) the FID or User ID, and (3) the URL of the webpage where the Event occurred. *Id.*, ¶ 67, 103-117. Defendants installed the Meta Pixel and TikTok Pixel on the Website's scheduler page and configured Events to disclose when someone booked an appointment. *See id.*, ¶¶ 71-102, 118-130. Further, clicking the "Book Appointment" button at the end of the scheduler triggers the Meta Pixel's "Scheduled Consult" and "Submit Application" Events, *id.*, ¶¶ 86, 87, and the same actions trigger the TikTok Pixel's "Complete Registration" Event. *Id.* at ¶¶ 122. Defendants also enabled the TikTok Pixel's "Advanced Matching" capabilities, which allow TikTok to match email addresses and phone numbers entered into form fields on the

---

[1] For example, the Meta Pixel's "Schedule" Event shares with Meta "[t]he booking of an appointment to visit one of your locations." *Id.*, ¶ 63; *see also id.* at ¶ 108 (listing the TikTok Pixel's Events).

scheduler application to User IDs, allowing TikTok to personally identify even those users not logged into TikTok when they used the scheduler. *Id.*, ¶ 112-113; 116, 120, 124.

Thus, Plaintiff alleges that when he booked his appointment, Defendants, by using these technologies, disclosed at least the following information to Meta and TikTok: (1) personal identifiers sufficient to identify the patient (e.g., FIDs, User IDs, email addresses, phone numbers); (2) the fact that the patient booked an appointment; (3) the location of the surgical hair transplantation clinic where the patient booked the appointment; and (4) the URL of the webpage where they booked the appointment. *Id.*, ¶¶ 93, 130.

Defendants moved to dismiss the Complaint, arguing that (1) Plaintiff lacked Article III standing to bring any of his claims, (2) Plaintiff allegedly consented to the disclosures at issue, creating an affirmative defense to each claim; and (3) Plaintiff failed to adequately plead his claims under Fed. R. Civ. P. 12(b)(6).

## II. LEGAL STANDARD

In resolving a Rule 12(b)(6) motion, a court must "accept as true all of the factual allegations contained in the complaint." *Erickson*, 551 U.S. at 93 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007)). It must construe those allegations "in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). The pleadings need only suggest a "plausible" scenario showing that the plaintiff is "entitled to relief." *Twombly*, 550 U.S. at 556-557. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. DISCUSSION

### a. Plaintiff Has Established Article III Standing

Defendants first seek to dismiss all of Plaintiff's claims on the grounds that Plaintiff has no Article III standing—specifically, that Plaintiff has not pled a concrete injury. Establishing Article III standing requires (1) an "injury in fact," (2) a "causal connection between the injury and the conduct complained of," and (3) likelihood "that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). An injury in fact must be "concrete, particularized, and actual or imminent." *TransUnion*, 594 U.S. 413, 423 (2021). Intangible harms, including "reputational harms, disclosure of private information, and intrusion upon seclusion[,]" are concrete when "plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.* at 424-425. Here, Plaintiff has pled both tangible and intangible concrete harms.

Plaintiff's claims all share a common law analogue—invasion of privacy. The ECPA, CIPA, and Maryland Wiretap Act are statutes which extend the common law tort of invasion of privacy to electronic communications. *See, e.g., Matera v. Google Inc.*, 2016 WL 5339806 at *10 (N.D. Cal. 2016) ("violations of the Wiretap Act and CIPA are similar to common law invasion of privacy in both their substantive prohibitions and their purpose"); *see also Stasi v. Inmediata Health Group Corp.*, 501 F. Supp. 3d 898, 911 (S.D. Cal. 2020) (finding same with respect to CMIA).

*TransUnion* also recognized that "Congress may elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." 594 U.S. at 425. Similarly, "state law can create interests that support standing in federal courts." *In re Facebook*, 956 F.3d at 599. Here, each of Plaintiff's statutory claims are

brought under statutes "intended to protect … historical privacy rights." *Id.* at 598 (affirming Article III standing in tracking pixel case alleging violations of ECPA, CIPA, and invasion of privacy); *Camplisson*, 2025 WL 3228949 at *5–6 (similar for CIPA claims); *Inmediata Health Group Corp.*, 501 F. Supp. 3d at 911 (similar for CMIA claims).

Plaintiff has also pled other "traditional tangible harms" sufficient to confer standing under *TransUnion*: monetary harms and invasions of privacy. *See TransUnion*, 594 U.S. at 424 ("monetary harms" are "obvious . . . traditional tangible harms."); *see also TransUnion*, 594 U.S. at 425 (listing "disclosure of private information" and "intrusion upon seclusion" as sufficiently concrete harms). Plaintiff alleges throughout his Complaint that his health data have monetary and commercial value, and that Defendants deprived him of the monetary value of this information without compensation. *See, e.g.,* ECF No. 41, ¶¶ 36-52; 153; 289-292. Plaintiff's harms track precisely onto those identified as concrete by the Supreme Court in *TransUnion*.

Thus, Plaintiff's allegations are sufficient to confer Article III standing. In so holding, this Court joins other courts in this Circuit that have found similar allegations conferred standing. *See, e.g., In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 598 (9th Cir. 2020) (plaintiffs had standing under ECPA, CIPA, and common law allegations of invasion of privacy, intrusion upon seclusion, and unjust enrichment); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020) (finding standing under ECPA and CIPA); *Camplisson v. Adidas America, Inc.*, 2025 WL 3228949 at *5 (S.D. Cal. 2025) (finding standing where the plaintiff brought a CIPA claim based on a website's use of the TikTok Pixel); *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368 at *5-*6 (N.D. Cal. 2025). Accordingly, Defendants' Motion is **DENIED** with respect to standing.

**b. Plaintiff's Consent**

Defendants argue that Plaintiff consented to the disclosures alleged in the Complaint and that his claims are therefore barred. *See* ECF No. 50-1, at 9-12. The Court disagrees, denies Defendants' Request for Judicial Notice, and finds the issue of consent unripe for resolution at this stage.

**i. Defendants' Request for Judicial Notice**

The Court first addresses Defendants' Request for Judicial Notice, which urges the Court to judicially notice three exhibits: Bosley's Terms of Service, Privacy Policy, and a screenshot of the scheduler webpage. *See* ECF Nos. 50-3—50-5. Courts may take judicial notice of matters either "generally known within the trial court's territorial jurisdiction" or which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). However, a court may not judicially notice facts subject to reasonable dispute. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). "The simple act of posting something publicly on the Internet is insufficient assurance of an exhibit's accuracy." *Cappello v. Walmart Inc.*, 2019 WL 11687705, at *3 (N.D. Cal. Apr. 5, 2019).

Here, none of Defendants' exhibits are proper for judicial notice because they do not concern matters generally known in this Court's jurisdiction and their accuracy is subject to dispute. Plaintiff alleges that the disclosures at issue took place in 2024, but Defendants represent that the exhibits were created on December 19, 2025. Because there is reasonable dispute over whether the Exhibits reflect the content and appearance of the documents when Plaintiff accessed the scheduler page, judicial notice is inappropriate. *See, e.g.*, *Jackson v. Fandom, Inc.*, 2023 WL 4670285, at *2 (N.D. Cal. July 20, 2023)

(denying judicial notice where "it is unclear whether the webpages, Terms of Use, and Privacy Policy submitted by Fandom are the same versions that may have been available to Jackson when she registered as a user."); Cappello, 2019 WL 11687705 at *3 (similar); *Thornton v. Mindvalley, Inc.*, 2025 WL 877714, at *3 (N.D. Cal. Feb. 14, 2025) (similar). Defendants' Request for Judicial Notice is therefore **DENIED**.

### ii. Plaintiff's Consent is Inappropriate for Resolution at this Stage

Moreover, it is axiomatic that resolution of factual disputes is not permitted on a Rule 12(b)(6) motion. *See* Dahlia v. Rodriguez, 735 F.3d 1060, 1076 (9th Cir. 2013). "Submitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint." Khoja, 899 F.3d at 1003; *see also* *Balestrieri v. SportsEdTV, Inc.*, 2025 WL 2776356, at *2 (N.D. Cal. 2025). Defendants' consent argument impermissibly attempts to establish a defense using documents extraneous to the Complaint.

"[W]hether plaintiffs consented to having their data collected is a question of fact." *See* *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1003 (N.D. Cal. 2024). Indeed, the Court would need to decide several factual questions in order to establish Plaintiff's consent: at minimum, whether Defendants' exhibits accurately reflect their contents on the date that Plaintiff accessed the Website and whether Plaintiff had actual or inquiry notice of the Terms of Use or Privacy Policy.

Defendants have not shown that Plaintiff had actual notice of the Terms of Use or Privacy Policy, and they have not established that Plaintiff had inquiry notice of the Terms of Use or Privacy Policy, which would require a showing that "(1) the website provides

reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).

These are questions of fact which the Court finds unripe for resolution at this stage. Defendants' Motion to Dismiss is **DENIED** with respect to Plaintiff's consent.

**c. Plaintiff Adequately Alleges His Claims**

Defendants move to dismiss all seven of Plaintiff's claims for failure to state a claim under Rule 12(b)(6). The Court addresses—and rejects—Defendants' arguments below.

**i. Wiretap Claims**

**1. Maryland Wiretap Act**

Under the Maryland Wiretap Act, it is unlawful to "willfully intercept . . . any wire, oral, or electronic communication." Md. Code, Cts. § Jud. Proc. § 10–402(a)(1). It defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." *Id.* § 10–401(3).

Defendants raise three arguments, each of which fails. First, Defendants assert that Plaintiff's claims under the statute are barred because the tracking pixels are not "devices" within this definition, instead falling under the so-called "telephone exemption." This excludes any "telephone or telegraph instrument, equipment or other facility for the transmission of electronic communications, or any component thereof" from the definition of "devices." *Id*. § 10-401(8)(i).

Defendants rely heavily on *Schmerling v. Injured Workers' Ins. Fund*, 795 A.2d 715 (Md. 2002). But in *Schmerling*, the court held that "to be deemed telephone equipment, the equipment must further the use of or functionally enhance the telecommunications system[.]" *Id.* at 453. Conversely, "a device placed on the line in order to receive the communication during its transmission" does not fall within the exemption. *Id.* at 455 (internal quotation marks and citation omitted). Defendants fail to explain how the tracking pixels "functionally enhance [a] telecommunications system" and, in any case, the Court finds that the tracking pixels are "devices" under the statute.

Second, Defendants argue that Plaintiff's consent bars his claim. For the reasons explained above, Defendants' argument regarding Plaintiff's consent are unripe for resolution at this stage. Third, Defendants argue that Plaintiff fails to allege that his communications were intercepted contemporaneously with the transmissions. But Plaintiff repeatedly alleges that the Meta and TikTok Pixels "contemporaneously" intercepted the contents of his communications as they were transmitted to Defendants. ECF No. 41, ¶¶ 82, 86-87, 122-123. At this stage, Plaintiff's allegations are sufficient. *See, e.g.*, *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *4 (N.D. Cal. Sept. 16, 2024); *Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772 at *8 (C.D. Cal. Oct. 4, 2024). Defendants' Motion is thus **DENIED** as to Plaintiff's Maryland Wiretap Act claim.

**2. ECPA**

Defendants argue that the ECPA's "party exception" defeats Plaintiff's claim. The "party exception" provides that "[i]t shall not be unlawful . . . for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication[.]" 18 U.S.C. § 2511(2)(d). However, Defendants fail to

address the ECPA's exception to the party exception—the "crime-tort" exception, which applies when a "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d).

Here, Plaintiff's allegations that the disclosures violated HIPAA are sufficient to trigger the crime-tort exception. *See* *R.S. v. Prime Healthcare Servs., Inc.*, 2025 WL 103488, at *6 (C.D. Cal. Jan. 13, 2025). Thus, the party exception does not apply to bar Plaintiff's claim. Accordingly, Defendants' Motion is **DENIED** as to Plaintiff's ECPA claim.

### 3. CIPA

Defendants raise two arguments with respect to Plaintiff's CIPA claim: first, that the "party exception" bars the claim, and second, that Plaintiff failed to allege an interception "in transit."

First, although CIPA generally applies to third parties, not participants, *In re Facebook*, 956 F.3d at 607, a defendant "who aids, agrees with, employs, or conspires with" a third party to violate § 631(a) is also liable under the statute—which Defendants again fail to address. Plaintiff alleges that Defendant employed Meta, TikTok, and other third parties to intercept his communications, which caused those third parties to violate § 631(a)'s second clause. ECF No. 41, ¶¶ 182, 232, 259. These allegations are sufficient to state a claim under CIPA's "aiding and abetting" clause. *See, e.g.*, *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1083 (C.D. Cal. 2021); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d

503, 521 (C.D. Cal. 2021); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019).

Second, Defendants argue that the communications they intercepted fall outside CIPA's scope because they were not intercepted "in transit." ECF No. 50-1, at 15. But Plaintiff repeatedly alleges that his communications were intercepted "in transit" because the interceptions and transmissions to third parties occurred simultaneously with the communication itself. *See* ECF No. 41, ¶¶ 82, 86-87, 122-123; *see also D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1199 (S.D. Cal. 2024). That is sufficient at this stage. Crediting Defendants' argument would also require the Court to "disavow the facts" alleged and engage in fact-finding about the timing of transmissions, which the Court will not do at this stage. *Heiting v. Taro Pharmaceuticals USA, Inc.*, 2024 WL 3738055, at *4, n. 6 (C.D. Cal. July 31, 2024); *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023) (holding that "in transit" requirement is unripe for resolution at pleading stage). Defendants' Motion is thus **DENIED** as to Plaintiff's CIPA claims.

**ii. MCPA**

Defendants raise three arguments against Plaintiff's MCPA claim: that the allegations fail to meet Rule 9(b)'s heightened pleading standard, that Plaintiff's consent defeats his claim,[2] and that Plaintiff failed to plead an identifiable loss and reliance.

Fed. R. Civ. P. 9(b)'s heightened pleading standard requires claims sounding in fraud to state the "the who, what, when, where, and how of the misconduct charged[.]"

---

[2] As explained, the Court will not reach any arguments regarding Plaintiff's consent at this stage.

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). When pleading claims of fraud by omission, as is the case here, "Rule 9(b) is less strictly applied . . . because an omission cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation." *Hyde v. Maryland State Bd. of Dental Examiners*, 2018 WL 5786114, at *6 (D. Md. Nov. 5, 2018) (internal quotations omitted). Notwithstanding Defendants' failure to specify which of Plaintiff's allegations fail to meet this standard, the Court finds that Plaintiff has stated his MCPA claims with particularity. *See, e.g.*, *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 489 (D. Md. 2020).

The Court also finds that Plaintiff has adequately pled an identifiable loss and reliance. Plaintiff alleges that his personal information has commercial value, ECF No. 41, ¶¶ 36-52, and that he was deprived of that value by his reliance on Defendants' statements and omissions. *See, e.g.*, *id*. at ¶ 280, 282. This is enough to allege identifiable loss and reliance. *See, e.g.*, *Shady Grove*, 2025 WL 2781542, at *7. Defendants' Motion is **DENIED** as to Plaintiff's MCPA claim.

**iii. CMIA**

"Medical Information" under the CMIA is "individually identifiable information … regarding a patient's medical history, … mental or physical condition, or treatment." Cal. Civ. Code § 56.05(j)(1). Plaintiff alleges that Defendants disclosed the fact that he sought treatment for a medical condition—hair loss—and the location of the surgical clinic where he booked an appointment, along with his name and other personal identifiers. *See* ECF No. 41, at ¶¶ 9, 93, 119, 214, 262. That is "medical information" under CMIA.

Defendants' cited authorities are inapposite. At best, Defendants' cases illustrate that patient status *alone* may not constitute "medical information." Conversely, where a plaintiff alleges disclosure of patient status in conjunction with the medical condition being treated—as Plaintiff does here—courts routinely find such allegations constitute "medical information" under the CMIA. *See, e.g.*, *St. Aubin v. Carbon Health Technologies, Inc.*, 2024 WL 4369675, at *10 (N.D. Cal. 2024). The Court also finds Defendants' arguments that tracking pixels fall under CMIA's "administrative services" exception unsubstantiated. Defendants' Motion is **DENIED** as to Plaintiff's CMIA claim.

**iv. Common Law Claims**

**1. Negligence**

"To state a claim for negligence in California, a plaintiff must establish the following elements: (1) the defendant had a duty, or an obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks, (2) the defendant breached that duty, (3) that breach proximately caused the plaintiff's injuries, and (4) damages." *Dent v. Nat'l Football League*, 902 F.3d 1109, 1117 (9th Cir. 2018). Plaintiff has done so here.

First, Plaintiff alleges duties under both common law and statute (under HIPAA and the Federal Trade Commission Act). ECF No. 41, ¶¶ 244-247. Additionally, California law imposes a statutory presumption of duty. Cal. Civ. Code § 1714(a). Second, Plaintiff alleges that Defendants breached those duties "by failing to use reasonable measures to protect Plaintiff's and the putative class members' Private Information." ECF No. 41, ¶ 248. Third, Plaintiff alleges that "Defendants' failure to use reasonable measures to protect

Plaintiff's and the putative class members' Private Information" would foreseeably result in injury. ECF No. 41, ¶ 249.[3] Fourth, Plaintiff adequately alleges that he was harmed, and continues to be harmed, by having his Private Information disclosed because of Defendants' negligence. ECF No. 41, ¶ 251. Because Plaintiff has sufficiently stated a claim for negligence, Defendants' Motion is **DENIED** as to Plaintiff's negligence claim.

**2. Invasion of Privacy**

To establish a claim of invasion of privacy for intrusion upon seclusion, Plaintiff "must show that [he] had an objectively reasonable expectation of privacy in [his] medical communications and [Defendant's] conduct was highly offensive." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022). Plaintiff has made both showings. It is uncontroversial that a person enjoys a reasonable expectation of privacy surrounding their medical information. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799. Accordingly, the unauthorized disclosure of medical information is uniformly considered highly offensive. *See, e.g., Regents of Univ. of California*, 672 F. Supp. 3d at 820; *Tenet Healthcare Corp.*, 789 F. Supp. 3d at 844 (collecting authorities). Plaintiff has stated a claim for invasion of privacy, and Defendants' Motion is **DENIED** as to Plaintiff's invasion of privacy claim.

**3. Unjust Enrichment**

Defendants argue that Plaintiff cannot pursue a claim for unjust enrichment because he "fails to plausibly allege that any sensitive data was actually disclosed or that he has in

[3] Moreover, breach and proximate cause are factual questions the Court cannot resolve at this stage. *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 101; *Inmediata Health Grp. Corp.*, 501 F. Supp. 3d at 915.

fact suffered any injury." ECF No. 50-1 at 25. To state a claim for unjust enrichment, a plaintiff must allege that "Defendant benefited from using Plaintiffs' information and that Plaintiffs' remedies at law are inadequate." *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1051 (N.D. Cal. 2025). Here, Plaintiff alleges that his protected health information—one of the most sensitive categories of personal information—was intercepted and disclosed to third parties and that he suffered personal and statutory injuries as a result. He plausibly alleges that his disclosed information has value, ECF No. 41, ¶¶ 30-52, that Defendants monetized his medical information for profit without his consent or compensation, *id.*, ¶¶ 292-294, and that he lacks an adequate remedy at law. *Id.*, ¶ 294. Plaintiff has therefore stated a claim for unjust enrichment. *See, e.g.*, *Shady Grove*, 2025 WL 2781542, at *7; *Tenet Healthcare Corp.*, 789 F. Supp. 3d at 846 (similar); *A.J. v. LMND Med. Grp.*, 2024 WL 4579143, at *4 (N.D. Cal. Oct. 25, 2024) (similar). Defendants' Motion is **DENIED** as to Plaintiff's unjust enrichment claim.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 50) is **DENIED**.

IT IS SO ORDERED.

DATED: _______________, 2025        BY: ______________________________

HON. JOHN F. WALTER
United States District Judge