**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ALEXANDER SISTI, individually and on behalf of all others similarly situated,

Plaintiff,

v.

BOSLEY INC. and BOSLEY MEDICAL GROUP, a medical corporation;

Defendants.

Case No. 2:25-cv-10669-JFW-DFM

**[PROPOSED] STATEMENT OF DECISION ON DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

**STATEMENT OF DECISION GRANTING MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO *FEDERAL RULES OF CIVIL PROCEDURE* RULE 12(B)(2) AND 12(B)(6)**

JOHN F. WALKER, UNITED STATES DISTRICT JUDGE

On February 13, 2026, Defendants Bosley Medical Group and Bosley, Inc. (collectively, "Bosley") filed a Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"). On March 16, 2026, Plaintiff filed his Opposition. On March 30, 2026, Bosley filed a Reply. After considering the moving, opposing, and reply papers, the arguments therein, the Court rules as follows:

## I. Factual and Procedural Background

Defendants Bosley, Inc., and Bosley Medical Group provide surgical hair loss treatments to patients. Plaintiff Alexander Sisti ("Plaintiff"), a citizen and resident of Maryland, claims that Bosley improperly disclosed personal information about him to Meta Platforms, Inc. ("Meta"), formerly Facebook, and TikTok Inc. ("TikTok"). Specifically, Plaintiff asserts that he visited Bosley's website and scheduled a hair transplantation consultation on the website's "scheduler page," and that Bosley transmitted that fact to Meta and TikTok through tracking pixels embedded on its website. Plaintiff seeks to represent a class of other website visitors whose personal information he alleges Bosley transmitted to Meta and TikTok.

The scheduler page contains a textual notice, located directly below the "Next Step" button on the scheduler page, which states in part: "By providing a phone number and submitting this form . . . I also agree to Bosley's [Terms of Service] and acknowledge the [Privacy Policy]." The phrases "Terms of Service" and "Privacy Policy" appear in blue text and contained hyperlinks to Bosley's Terms of Service and Privacy Policy.

The website's Privacy Policy stated in relevant part: "By accessing and using the website you are consenting to be bound by Bosley's privacy policy and this website's terms of use in effect at the time of your use. The terms in this privacy policy also apply to the personal information you provide to us through any means." The website's Terms

of Service, in turn, states in relevant part: "When you visit our Sites . . . [w]e or third parties we work with automatically collect certain information using technologies such as cookies . . . ." Further, "Advertising cookies may be placed by us or third parties to enable third party ad networks to recognize a unique cookie on your computer or mobile device . . . . This information may be used for the purpose of targeting advertisements on our Sites and third party sites based on those interests."

On August 5, 2025, Plaintiff filed his Complaint in the Northern District of California. On November 13, 2025, the case was transferred to the Central District of California. On December 19, 2025, Bosley filed a Motion to Dismiss the original Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). On January 9, 2026, Plaintiff Alexander Bosley ("Plaintiff") filed a First Amended Complaint ("FAC"). On January 12, 2026, the Court denied Defendants' first Motion to Dismiss as moot, in light of Plaintiff filing the FAC.

In the FAC, Plaintiff alleges eight claims against Bosley: (1) the violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1), *et seq.*; (2) the violation of the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56, *et seq.*; (3) the violation of the California Invasion of Privacy Act, Cal. Penal Code §§ 631, 632; (4) negligence; (5) the violation of the Maryland Wiretap Act, Md. Code Ann. § 10-402; (6) the violation of the Maryland Consumer Protection Act, Md. Comm. Law Code Ann., § 13-101; (7) unjust enrichment; and (8) invasion of privacy – intrusion upon seclusion.

## II. <u>Legal Standard</u>

### a. Rule 12(b)(1)

The party mounting a Rule 12(b)(1) challenge to the Court's jurisdiction may do so either on the face of the pleadings or by presenting extrinsic evidence for the Court's consideration. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual"). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on

their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In ruling on a Rule 12(b)(1) motion attacking the complaint on its face, the Court accepts the allegations of the complaint as true. *See, e.g., Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). "However, where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine v. U.S.*, 704 F.2d 1074, 1077 (9th Cir. 1983). It is the plaintiff who bears the burden of demonstrating that the Court has subject matter jurisdiction to hear the action. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).

**b. Rule 12(b)(6)**

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the

nonmoving party. *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted). However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment. *See, e.g., id.*; *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994).

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a Court does not need to grant leave to amend in cases where permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

## III. <u>Discussion</u>

Bosley argues that all of Plaintiff's claims must be dismissed because Plaintiff lacks Article III standing, Plaintiff consented to the alleged disclosures, and Plaintiff fails to state any claim.

### A. Plaintiff Lacks Article III Standing.

Bosley argues that Plaintiff lacks Article III standing because he fails to allege any concrete harm in the FAC. The allegations in the FAC are limited to the "scheduler page"

on Bosley's website, where Bosley enables website visitors to input personal information—such as their name, email address, and home address—in order to schedule a consultation at one of Bosley's clinics. Plaintiff, however, does not allege that the *contents* of the information he entered on the scheduler page were disclosed to any third parties. In other words, Plaintiff does not allege that Bosley shared his name, email address, home address, or any other information he entered on the scheduler page, with Meta or TikTok. Instead, Plaintiff alleges that Bosley disclosed "the fact" that Plaintiff had filled out Bosley's scheduler form, along with "identifiers" that enabled Meta and TikTok to identify him specifically—nothing more.

Based on these alleged disclosures, Plaintiff's allegations of actual harm in the FAC are sparse, and mostly consist of repeated claims that Plaintiff and the putative class members suffered "invasions of their statutorily protected right to privacy." But Plaintiff cannot establish standing merely by alleging that Defendant violated "statutory rights;" instead, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). The Ninth Circuit upholds this requirement in the context of alleged invasions of privacy: Article III standing "requires a plaintiff to demonstrate more than just a statutory violation when evaluating whether a plaintiff has alleged a concrete injury." *Popa v. Microsoft Corp.*, 153 F.4th 784, 793 (9th Cir. 2025).

Plaintiff argues that he was harmed by invasion of his privacy and by monetary harm, as his "health data" was disclosed, and that disclosure deprived him of the value of that "health data". However, the FAC does not allege that Plaintiff's "health data" was disclosed. Plaintiff does not allege that the contents of any information that he entered into the scheduling form—health-related or otherwise—was disclosed to third parties. And while Plaintiff argues that merely submitting the scheduling form itself is sufficient to constitute "health data" about Plaintiff, he does not allege that he ever became a Bosley patient, attended any appointment at a Bosley clinic, or paid Bosley for any medical services whatsoever. In short, it is not clear what "sensitive information" Plaintiff claims

was disclosed, how it constituted "health data," how it intruded upon any of his "private affairs," or how he could have been aggravated, distressed, or inconvenienced by the disclosure of any information. "Taken together, Plaintiff alleges only that Defendant invaded his privacy by impermissibly collecting Plaintiff's 'data' and 'information;'" but "Plaintiff cannot establish constitutional standing based on conclusory statements." *Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413, at *4 (N.D. Cal. Aug. 6, 2025) (internal citations omitted).

Furthermore, Plaintiff's allegation of "monetary loss," based on "diminution of value" of his "health data," is a purely speculative harm that does not match the data that the FAC alleges Bosley disclosed. "Courts have accepted diminution in value as evidence of injury in fact." *Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1229 (N.D. Cal. 2022) (citing *In re Facebook Priv. Litig.*, 572 F. App'x 494, 494 (9th Cir. 2014)). To survive a motion to dismiss on this theory of injury, a plaintiff "must establish both the existence of a market for her personal information and an impairment of her ability to participate in that market." *Owens v. Smith, Gambrell & Russell Int'l, LLP*, 2024 WL 3914663, at *6 (C.D. Cal. May 30, 2024) (internal citation omitted).

Here, Plaintiff fails to establish these facts. While the FAC explains at length that "consumer data" has value to third party data aggregators, those allegations have limited relevance, given the very narrow scope of information that Plaintiff alleges Bosley disclosed. *See David Abellard, Jr., et al. v. Stretto, Inc.*, 2025 WL 1674265, at *8 (C.D. Cal. Apr. 25, 2025) ("Plaintiffs provide insufficient facts in support of this allegation, and the factual allegations Plaintiffs do provide are unrelated to the type of personal information at issue."). The FAC fails to provide any authority that the particular data allegedly disclosed about Plaintiff "has any compensable value in the economy at large." *Corona v. Sony Pictures Ent., Inc.*, 2015 WL 3916744, at *4 (C.D. Cal. 2015). It also "fails to allege enough facts to establish how [Plaintiff's] personal information is less valuable as a result of the breach." *Razuki v. Caliber Home Loans, Inc.*, 2018 WL

6018361, at *1 (S.D. Cal. 2018). Because Plaintiff does not allege that he has ever sold that data in the past or intends to sell it in the future, his alleged injury based on an impairment in his ability to sell his own data is purely hypothetical and insufficient to confer standing. *See, e.g., In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019) (plaintiffs alleged only a hypothetical injury due to diminution in value where plaintiffs did not allege they intended to sell their personal information to a third party or that a third party would have bought that information as a standalone product).

The references in the FAC to other forms of harm are also insufficient to allege a concrete injury. First, Plaintiff's allegation that he suffered "emotional distress" as result of learning about the alleged disclosure is "too sparse and conclusory to support" a claim for damages, especially where—as here—Plaintiff does not allege that any sensitive information was disclosed. *See Sallie Holly v. Alta Newport Hosp., Inc.*, 2020 WL 6161457, at *4 (C.D. Cal. Oct. 21, 2020) (finding allegations that a plaintiff "experienced fear of identity theft, embarrassment, generalized anxiety … [and] emotional pain and upset" to be "too sparse and conclusory" (citing *Burnell v. Marin Humane Soc'y*, 2015 WL 6746818, at *19 (N.D. Cal. Nov. 5, 2015) (dismissing intentional infliction of emotional distress claim where complaint lacked "any facts pertaining to the nature and extent of [p]laintiffs' emotional or mental suffering")).

Second, Plaintiff's allegations that Bosley received "substantial financial benefits" and "substantial, quantifiable value" from their alleged collection and use of Plaintiff's personal information fail to allege any concrete injury, because Plaintiff does not allege that any such benefits resulted in actual harm to Plaintiff. *See Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1182 (N.D. Cal. 2025) (plaintiffs failed to allege that they "suffered economic harm because Defendant unjustly profited from the use of their data").

Third, Plaintiff's allegation that Bosley "fail[ed] to provide full value of medical services, which included duty to maintain confidentiality," fails because Plaintiff does

not allege that he paid *anything* to Bosley for medical services—let alone that he "paid a premium" for Bosley to maintain confidentiality of information. *See Razuki*, 2018 WL 6018361, at *1 (plaintiff "does not provide any information to show that he paid a premium for [defendant] to provide reasonable and adequate security measures.").

Therefore, the Court concludes that the FAC fails to allege a concrete injury, and thus, Plaintiff lacks Article III standing. Bosley's Motion to Dismiss is granted under Rule 12(b)(1).

**B. Plaintiff Consented To The Data Disclosures At Issue.**

Bosley argues that Plaintiff consented to the disclosures alleged in the FAC because the scheduler page provided him with notice of the website's Privacy Policy and Terms of Conditions, which informed website visitors of the disclosures at issue. Consent is a defense to each of the claims that Plaintiff asserts in the FAC. *See* 28 U.S.C. § 2511(2)(d) (ECPA claim); Cal. Penal Code § 631(a) (CIPA claim); Cal. Civ. Code § 56.10(a) (CMIA claim); Md. Code, Cts. & Jud. Proc. § 10-402(c)(3) (Maryland Wiretap Act claim); *Smith v Facebook*, 262 F. Supp. 3d 943, 955-56 (N.D. Cal. 2017) (dismissing invasion of privacy claim based on plaintiff's consent to terms of service that disclosed use of tracking cookies); *Newkirk v. Harbor East Parcel, D-Hotel, LLC*, 2024 WL 895119, at *5 (D. Md. Mar. 1, 2024) (dismissing Maryland Consumer Protection Act claim based on hotel surcharge, because website terms and conditions provided notice of the surcharge); *Brown v. El Dorado Union High Sch. Dist.*, 76 Cal. App. 5th 1003, 292 Cal. Rptr. 3d 72 (2022) (in negligence claim, consent relieves defendant of legal duty to the plaintiff); *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) (unjust enrichment claim requires *unjust* retention of benefit by defendant).

Plaintiff argues first that the Court should not take judicial notice of the exhibits to Bosley's Motion to Dismiss, which include the website's Privacy Policy, the Terms and Conditions, and a screenshot of the scheduler page, which shows the scheduler page's textual notice of the Privacy Policy and the Terms and Conditions. Plaintiff argues that these exhibits "do not necessarily reflect the content and appearance of the scheduler

page" when Plaintiff visited it. However, Plaintiff fails to raise any plausible argument that these webpages actually differed from the versions of the webpages that he viewed. "Courts are . . . permitted to take judicial notice of privacy policies that appear on publicly available websites because their authenticity cannot reasonably be questioned." *A.S. v. SelectQuote*, 2024 WL 3881850, at *4; (compiling cases where California courts took judicial notice of privacy policies on publicly available websites). Here, Defendant's privacy policy is publicly available on its website, permitting judicial notice.

Separately, the Court may also incorporate Bosley's website by reference, because "Plaintiff[] reference[s] Defendant's website throughout [his] Complaint." *A.S. v. SelectQuote*, 2024 WL 3881850, at *3-4. Further, Plaintiff's screenshots of the scheduling page—included in the FAC—omitted the textual notice Bosley provides on that webpage about its privacy policy and terms of service. "The [incorporation-by-reference] doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 850 (N.D. Cal. 2022) (internal citation omitted).

Next, Plaintiff argues that he did not "manifest assent" to Bosley's Terms of Service or Privacy Policy, and characterizes the notice provided as an unenforceable "browsewrap" agreement. The notice at issue, however—which states, "By providing a phone number and submitting this form . . . I also agree to Bosley's [Terms of Service] and acknowledge the [Privacy Policy]"—is a sign-in wrap agreement, not a browsewrap agreement. With a sign-in wrap agreement, a website visitor "manifests assent" by taking an action, such as clicking the "purchase" button, or—as here—by submitting Bosley's scheduling form. *See Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 465-66 (2021) (explaining sign-in wrap agreements).

Sign-in wrap agreements are enforceable where they are reasonably conspicuous and require the website visitor to "take[] some action" to manifest their assent. *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023). Both elements are satisfied

here. The links to the Terms of Service and Privacy Policy are emphasized in blue font, and the notice's location immediately under the "Next Step" button makes it "difficult to miss." *Hong v. StubHub, Inc.*, 2024 WL 4720924, at *3 (C.D. Cal. 2024). Further, the notice explicitly notified Plaintiff and other website visitors they manifested their assent to the Terms of Service and the Privacy Policy by submitting the scheduling form—which is exactly what Plaintiff alleges he did. *Driskill v. Experian Info. Sols., Inc.*, 753 F. Supp. 3d 839, 844. (N.D. Cal. 2024).

Finally, Plaintiff argues that the Terms of Service and the Privacy Policy did not disclose the specific disclosures that he contests on the scheduler page. But Plaintiff provides no authority—and the Court is aware of no authority—suggesting that such a granular level of specificity is required. The text of the two policies makes clear that third party cookies may be placed when an individual uses Bosley's website, that those cookies may enable third parties to identify the user, and that the information collected from the individual's use of the website may be used for advertising purposes. That is exactly the practice that Plaintiff complains of in the FAC.

Therefore, the Court finds that Plaintiff was provided with reasonably conspicuous notice of Bosley's data disclosure policies, and that by clicking the "Next step" button on the scheduler page, he manifested his assent to the same data disclosures that he challenges in his FAC. Bosley's Motion to Dismiss is therefore granted, and all of Plaintiff's claims are dismissed under Rule 12(b)(6).

**C. Plaintiff Fails To State A Claim Under ECPA, CIPA, Or The Maryland Wiretapping Act.**

Bosley argues that Plaintiff fails to state a claim under CIPA or the Maryland Wiretap Act (MWA) because Plaintiffs has not alleged an interception "in transit" under CIPA, or—similarly—an interception that is "contemporaneous with the transmission of the communication" under MWA. Cal. Penal Code s. 631(a); *Martin v. State*, 96 A.3d 765, 776 (Md. Ct. App. 2014) (citation omitted). Plaintiff argues that it is "more than enough" that he alleges that the Meta and TikTok Pixels "contemporaneously" intercept

the contents of Plaintiff's communications as they are transmitted to Defendants.

However, "[t]he Court is not required to accept as true allegations in the complaint which are . . . merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels–Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010). Plaintiff fails to provide any support for the illogical notion that Bosley could have disclosed Plaintiff's information to third parties *while* that information was still in transit from Plaintiff *to Bosleys*. *See Adler v. Community.com*, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021) (dismissing a wiretap claim because plaintiff did not state a "plausible allegation that Defendant acted to learn the contents of the message while they were, in a technical sense, in transit or in the process of being received."). And Plaintiff provides even less support for the notion that Meta or Facebook could have intercepted "and read" the contents of his communications while they were still in transit to Bosley, as required for a claim under CIPA. *Torres v. Prudential Financial, Inc.*, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025). Thus, Plaintiff fails to state a claim under CIPA or the MWA.

Further, Bosley argues that Plaintiff's ECPA and CIPA claims fail because each statute contains an "exemption from liability for a person who is a 'party' to the communication," which Bosley undisputedly is. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020). Plaintiff argues that the party exception does not apply, because the "crime-tort exception" for each statute prevents the party exception from applying when a communication is intercepted for the purpose of committing any criminal or tortious act. Plaintiff argues that Bosley intercepted his communications for criminal purposes, namely for the purpose of violating HIPAA.

However, the FAC falls well short of alleging any act "independent of the interception itself" that "was done for a criminal or tortious purpose." *Doe 1 v. Chestnut Health Sys., Inc.*, 2025 WL 1616635, at *12 (C.D. Ill. June 6, 2025). By claiming that Bosley had a "tortious purpose" in disclosing Plaintiff's website interactions to third parties, Plaintiff is merely claiming that the *interception itself* was committed for a

tortious purpose. *See Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1119 (S.D. Cal. 2023) (crime-tort exception under ECPA is not triggered "when, as here, the tortious conduct is the alleged wiretapping itself."). Moreover, because the Court has determined that the alleged data disclosures did not disclose Plaintiff's "health data," Plaintiff has not plausibly alleged that Bosley violated HIPAA in the first place. Thus, the Court finds that Plaintiff fails to state a claim under ECPA or CIPA.

**D. Plaintiff Fails To State A Claim Under The Maryland CPA.**

The Maryland CPA (MCPA) prohibits a person from engaging "in any unfair, abusive, or deceptive trade practice" to sell consumer goods, Md. Code Ann., Com. Law § 13-303(1), and provides a private right of action to "recover for injury or loss sustained by [the plaintiff] as a result of" a prohibited practice," *id.* § 13-408. To state a claim under the MCPA, Plaintiffs must allege an (1) unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury. *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012).

Bosley argues that Plaintiff fails to allege that Bosley committed an unfair or deceptive practice: the material facts of Bosley's data disclosures to third parties were disclosed in the Terms of Service and Privacy Policy. The Court agrees, for the same reasons that it held that Plaintiff consented to the data disclosures at issue.

Next, Bosley argues that Plaintiff fails to allege any ascertainable injury or loss. Recovery is only available under the MCPA's private right of action if the consumer "suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance" on the seller's statement or omission. *See Twardzik v. HP Inc.*, No. 22-2650, 2023 U.S. App. LEXIS 23740, at *6 (3d Cir. Sep. 7, 2023) (citing *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 277 (Md. 2007)). Plaintiff alleges summarily that he "suffered ascertainable loss including, among other things, improper taking of [his] valuable data." FAC ¶ 283. This type of "threadbare" recital of the elements of his MCPA claim does not suffice under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, Plaintiff failed to allege the existence of an actual market for the specific

data at issue in this case, or an impairment of Plaintiff's ability to participate in that market. The Court therefore holds that Plaintiff has also failed to allege any ascertainable injury or loss under the MCPA.

**E. Plaintiff Fails To State A Claim Under The CMIA.**

Bosley argues that Plaintiff's CMIA claim fails because Plaintiff has not alleged the disclosure of "medical information." The CMIA applies only to "individually identifiable information . . . regarding a patient's medical history, mental health application information, mental or physical condition, or treatment." Cal. Civ. Code § 56.05(i). Here, Plaintiff alleges that *the fact* that he filled out the Bosley scheduler form was disclosed to third parties, but *not* the contents of the scheduler form. Based on the allegations in the FAC, the Court concludes that Plaintiff merely filling out Bosley's scheduler form does not constitute information about his "medical history, mental health application information, mental or physical condition, or treatment." *Id.* Merely a tenuous association between an identified plaintiff and a medical provider is not sufficient to qualify as "medical information" under the CMIA. *See, e.g.*, *Wilson v. Rater8, LLC*, 2021 WL 4865930, at *4-5 (S.D. Cal. Oct. 18, 2021) (dismissing CMIA claim, finding that "treating physician names, medical treatment appointment information, and medical treatment discharge dates and times" does not constitute "medical information"); *Eisenhower Med. Ctr. v. Super. Ct.*, 172 Cal. Rptr. 3d 165, 169 (Cal. Ct. App. 2014) (disposing of CMIA claim, finding that PII and medical record numbers were not "medical information"); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123-24 (S.D. Cal. 2023) (dismissing CMIA claim in Pixel healthcare case, finding that "browsing activity . . . to 'research . . . doctors,' 'look for providers,' and 'search for medical specialists'" did not constitute "medical information").

**F. Plaintiff Fails To State A Claim For Negligence, Intrusion Upon Seclusion, Or Unjust Enrichment.**

Plaintiff asserts common law claims for negligence, intrusion upon seclusion, and unjust enrichment. As to Plaintiff's negligence claim, Bosley argues that Plaintiff fails to

allege a breach of any legal duty, firstly because Plaintiff consented to the data disclosures, secondly because no confidential information was disclosed to third parties from the scheduler form, and thirdly because Plaintiff does not allege that he was a Bosley patient, and thus no duty of care arose between Plaintiff and Bosley. The Court agrees on all points. *See Alexander v. Scripps Mem'l Hosp. La Jolla*, 23 Cal. App. 5th 206, 235 (2018) ("A physician's duty of care to a patient does not arise until a physician-patient relationship is established.").

Next, Bosley argues that Plaintiff fails to state a claim for intrusion upon seclusion, firstly because he consented to the disclosures, thus negating any reasonable expectation of privacy, and secondly because the disclosures constitute "standard internet transmissions" for which there is no reasonable expectation of privacy as a matter of law. *See, e.g., Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *1-2 (S.D. Cal. May 8, 2024) ([A] number of courts have found that consumers do not have a reasonable expectation of privacy over their activity in that space." (collecting cases)). Based on the limited scope and non-sensitive nature of the information that Plaintiff alleges Bosley disclosed, the Court finds that Plaintiff fails to allege any reasonable expectation of privacy. The Court further finds that Plaintiff fails to allege an actionable intrusion. "The thrust of [plaintiff]'s allegations is not that [defendant] obtained unwanted access to data . . . but rather that it improperly disclosed data . . . That is not an intrusion." *Banga v. Equifax Info. Servs. LLC*, 2015 WL 3799546, at *9 (N.D. Cal. June 18, 2015).

Finally, Bosley argues that Plaintiff fails to state a claim for unjust enrichment. The Court agrees: while Plaintiff seeks "disgorgement" of all "proceeds" that Bosley allegedly received from the disclosure of Plaintiff's "sensitive data," there are no allegations that Plaintiff's "sensitive data" was ever disclosed. Thus, that fails to allege the receipt of a benefit by the defendant, or the unjust retention of the benefit at the expense of the plaintiff. *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016).

## IV. <u>Conclusion</u>

For all the foregoing reasons, Defendants' Motion to Dismiss is GRANTED with prejudice as to all claims. Plaintiff was already afforded the opportunity to file an Amended Complaint which failed to cure the defects in his pleadings, and the Court finds it highly probable Plaintiff would not succeed in stating a valid claim even if further amendment were permitted. *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile."). Accordingly, this action is DISMISSED with prejudice.

IT IS SO ORDERED.

DATED: ______________________________

Hon. John F. Walter

**CERTIFICATE OF SERVICE**

I, Saman M. Rejali, hereby certify that I served a true and correct copy of the foregoing on all parties of record via CM/ECF on April 1, 2026.